**STATE of Iowa, Appellee,**

v.

**Michael W. REESE, Appellant.**

**No. 61071.**

Supreme Court of Iowa.

Dec. 20, 1978.

Gordon M. Liles and Kent Hutcheson, Fort Madison, for appellant.

Richard C. Turner, Atty. Gen., J. E. Tobey, III, and Ray Sullins, Asst. Attys. Gen., for appellee.

McGIVERIN, Justice.

We granted further review of a decision of the Court of Appeals reversing the trial court conviction of defendant Michael W. Reese for escape in violation of Section 745.1, The Code, 1975. The case presents issues involving the claimed defense of necessity and the burden of proof thereon. We vacate the Court of Appeals decision and affirm the trial court conviction.

Defendant was charged by county attorney's information with escape from the Iowa State Penitentiary, Ft. Madison. He organized the escape and departed with other inmates from inside the penitentiary without permission on March 29, 1977.

At trial defendant testified in his own behalf and admitted leaving the penitentiary without authorization, but claimed his departure was due to a fear of further homosexual attack and possible death. Defendant described difficulties he experienced with another inmate who defendant would identify only as "the lifer". According to defendant, the lifer had established a scheme whereby he offered new inmates protection from homosexual attack by others in exchange for voluntary homosexual liaisons with the lifer. When defendant attempted to disrupt the lifer's scheme, the lifer threatened to kill Reese. Defendant is five feet, nine inches tall and weighs 150 pounds. The lifer was six feet, two inches and weighed 225 pounds.

Defendant further testified that after the lifer's initial threats, defendant twice contacted his counselor by note, but received no response. He also informed the penitentiary psychiatrist of the problem. This too failed to obtain any results. On March 26,

the lifer renewed his threats against defendant and carried out a homosexual attack. Defendant made no further attempts to contact prison officials but accomplished an escape on March 29.

Defendant was apprehended over 24 hours later hiding in a shed on a private farm about eight miles from the penitentiary. Then he was unarmed and offered no resistance to the arresting officers. He testified he had considered contacting an attorney after his escape but had no opportunity to do so. He had not turned himself in to police authorities after his departure from the prison.

At the time in question the penitentiary was being operated with eighteen employees less than its full complement. The approximately 300 prisoners in defendant's cellhouse were supervised by five guards.

Defendant requested the court to instruct the jury on defenses of necessity and compulsion to the escape charge and to place the burden of disproving those defenses on the State. Defendant also objected to the failure of the court to so instruct the jury. The request and objection were overruled by the trial court. Defendant was convicted and sentenced.

On appeal the Court of Appeals by a three to two majority opinion reversed the trial court and held the court should have instructed the jury on the defense of necessity and should have placed the burden of disproving that defense on the State.

The Court of Appeals further held a defense of compulsion could not apply to an escape charge under Section 745.1 because intent is not an essential element under that statute. *State v. Leckenby*, 260 Iowa 973, 976, 151 N.W.2d 567, 569 (Iowa 1967); *State v. Wharff*, 257 Iowa 871, 875, 134 N.W.2d 922, 925 (1954).

In our order granting further review, we stated "the issues presented for review" will be submitted to this court.

The issues presented for our further review by the parties in the application, resistance and briefs thereon are in substance:

1. Whether the defense of necessity exists to an escape charge under Section 745.1 and, if so, the criteria for that defense.

2. Which party should bear the burden of proving or disproving any such defense.

3. Whether defendant was entitled to submission of that defense to the jury.

I. *The defense of necessity.* Defendant contends that this court should recognize the defense of necessity in an escape prosecution under Section 745.1. He relies primarily upon *People v. Unger*, 66 Ill.2d 333, 5 Ill.Dec. 848, 362 N.E.2d 319 (1977), which he characterizes as representative of a trend, initiated by *People v. Lovercamp*, 43 Cal.App.3d 823, 118 Cal.Rptr. 110, 69 A.L.R.3d 668 (1974), to recognize either necessity or compulsion (duress) as such defenses.

However, the parties have only presented the issue of the defense of necessity for our review.

The State's response to defendant's contention is that recognition of a defense of necessity would require that *State v. Cahill*, 196 Iowa 486, 194 N.W. 191 (1923) be overruled. The State also argues that such a defense would be disruptive of prison discipline and that the facts of this case do not allow Reese to avail himself of the necessity defense in any event.

We agree that *State v. Cahill* does not control the disposition of this cause. In *Cahill* the defendant prisoner in an escape case complained of being placed in solitary confinement with an inadequate amount of food and in unsanitary conditions. The prisoner was on bread and water as punishment for unruly behavior. We held those conditions could not justify an escape. 196 Iowa at 490, 194 N.W. at 193. A specific threat of death, attack, or substantial bodily injury, however, was not involved. Because the evil Reese claimed to avoid was substantially greater than that involved in *Cahill*, *Cahill* can be readily distinguished on the facts.

The precise question of existence of a necessity defense to an escape charge

based on fear of injury or death from physical attack has never previously been decided by us. Although section 745.1 does not require intent as an element,[1] necessity is not tied to a mental element. See *State v. Ward*, 170 Iowa 185, 152 N.W. 501 (1915); see generally 1 Iowa L.Bull. 174 (1915). In *Ward*, the defendant was permitted to raise, and ultimately prevailed on, a necessity defense to a charge of unlawfully killing a deer. Examination of the statute involved, and of the discussion of the statute in the case, make it apparent that intent was not an element in that prosecution. The defendant in *Ward* killed the deer because several deer had regularly eaten his crops. He promptly reported the killing to the authorities and turned the carcass over to them to establish a test case of the right to protect his property from the forces of nature. He contended the killing was wholly defensive and preventive. We there said: "The right of defense of person and property is a constitutional right (art. 1, Sec. 1, Constitution of Iowa), and is recognized in the construction of all statutes." 170 Iowa at 189, 152 N.W. at 502. We further said, "We think, therefore, that the defendant was entitled to make an issue of fact on the question of justification, as already indicated." 170 Iowa at 191, 152 N.W. at 503.

Therefore, it appears the defense of necessity exists in Iowa. If it applies against the forces of nature, it equally should apply to human forces directed against the person, as defendant claims in the present case.

The defense does not negate any element of a crime. Rather, the question of necessity arises only after it has been determined that a crime has occurred as an entirely independent inquiry. *People v. Condley*, 69 Cal.App.3d 999, 1012–1013, 138 Cal.Rptr. 515, 522 (1977).

What should be the conditions attendant to a defense of necessity as it applies to an escape charge under Section 745.1?

Two approaches to the definition of the defense are found in other jurisdictions. The first approach is that of the leading case, *People v. Lovercamp*, 43 Cal.App.3d 823, 831–832, 118 Cal.Rptr. 110, 115, 69 A.L.R.3d 668, 676 (1974). There the court held that "a limited defense of necessity is available if the following conditions exist:

(1) The prisoner is faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future;

(2) There is no time for a complaint to the authorities or there exists a history of futile complaints which make any result from such complaints illusory;

(3) There is no time or opportunity to resort to the courts;

(4) There is no evidence of force or violence used towards prison personnel or other 'innocent' persons in the escape; and

(5) The prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat." (Footnote omitted.)

The approach of adopting specific and carefully defined limitations has been rejected by other courts. However, those courts have held that the *Lovercamp* conditions go to the weight and credibility of defendant's testimony. *Esquibel v. State*, 91 N.M. 498, 576 P.2d 1129, 1132 (1978); *People v. Unger*, 66 Ill.2d at 342, 362 N.E.2d at 323; *People v. Luther*, 394 Mich. 619, 623–624, 232 N.W.2d 184, 187 (1975).

Other authorities bearing on the subject are collected at 40 A.L.R.2d 908, 70 A.L. R.2d 1430, 69 A.L.R.3d 678; see also *Gardner*, "The Defense of Necessity In the Right to Escape from Prison—A Step Toward Incarceration Free From Sexual Assault." 49 S.Cal.L.Rev. 110.

We are inclined to follow the first approach and hereby adopt the *Lovercamp* conditions for any defense of necessity to an escape charge under Section 745.1.

---

1. We note that the crime of escape from custody under Sec. 719.4(1) and (2), 1977 Code Supp., effective January 1, 1978, occurs when a prisoner "intentionally escapes". Thus this statute appears to differ from Sec. 745.1, 1975 Code, as interpreted by this court.

Analogous factual authority in Iowa for the fifth condition listed in *Lovercamp* is *State v. Ward*, where defendant turned himself in to the authorities immediately after committing the alleged offense. 170 Iowa at 190, 152 N.W. at 503. We also approve this language from *Lovercamp*, 43 Cal.App.3d at 831, 118 Cal.Rptr. at 115, 69 A.L.R.3d at 675.

We, therefore, conclude that the defense of necessity to an escape charge is a viable defense. However, before *Lovercamp* becomes a household word in prison circles and we are exposed to the spectacle of hordes of prisoners leaping over the walls screaming "rape", we hasten to add that the defense of necessity to an escape charge is extremely limited in its application. This is because of the rule that upon attaining a position of safety from the immediate threat, the prisoner must promptly report to the proper authorities.

The *Lovercamp* conditions for submission of a defense of necessity to an escape charge would allow a defendant to remove himself from an intolerable immediate situation, and yet place responsibility on him to immediately turn himself in or report to proper authorities when he had reached a position of safety. This condition would at least in part answer the State's contention that the necessity defense would disrupt prison conditions.

▮ At the same time our prison authorities should take all reasonable precautions for the safety of their inmates. We approve this statement from the Michigan Court of Appeals in *People v. Harmon*, 53 Mich.App. 482, 220 N.W.2d 212, 213 (1974), affirmed, 394 Mich. 625, 232 N.W.2d 187 (1975):

The persons in charge of our prisons and jails are obligated to take reasonable precautions in order to provide a place of confinement where a prisoner is safe from gang rapes and beatings by fellow inmates, safe from guard ignorance of pleas for help and safe from intentional placement into situations where an assault of one type or another is likely to result. If our prison system fails to live

up to its responsibilities in this regard we should not, indirectly, countenance such a failure by precluding the presentation of a defense based on those facts.

II. *The burden of proof.* Having decided that a defense of necessity can be available to an escape charge under Section 745.1, we next must decide where the burden of proving or disproving the defense lies.

▮ We are persuaded, by analogy to our decisions on the proof burden on the defenses of self defense, *State v. Vick*, 205 N.W.2d 727, 731 (Iowa 1973); alibi, *State v. Sallis*, 238 N.W.2d 799, 801 (Iowa 1976); insanity, *State v. Thomas*, 219 N.W.2d 3, 5 (Iowa 1974); entrapment, *State v. Baumann*, 236 N.W.2d 361, 364 (Iowa 1975); and intoxication, *State v. Gambell*, 262 N.W.2d 792, 795 (Iowa 1978) that the burden should rest upon the State to disprove the defense beyond a reasonable doubt after the defense is properly raised by defendant. The analogy with entrapment is especially persuasive because that defense, like necessity, is a question which arises after a showing of defendant's guilt has been made. In spite of such showing, as a matter of public policy, a conviction cannot be tolerated. *State v. Mullen*, 216 N.W.2d 375, 381 (Iowa 1974). In entrapment cases, defendant has the burden of generating a fact question on the defense, but the State has the burden to disprove entrapment beyond a reasonable doubt. *State v. Cooper*, 248 N.W.2d 908, 910 (Iowa 1976). The analogy of necessity with self defense was further drawn for us in *State v. Ward*, 170 Iowa at 189, 152 N.W. at 502. The rule in self defense cases is the same as that described for entrapment. See *State v. Overstreet*, 243 N.W.2d 880, 884 (Iowa 1976).

▮ III. *Was a necessity defense submissible here?* Under the conditions for a necessity defense set forth above, we must decide whether defendant generated a fact question sufficient that the defense should have been submitted to the jury. We believe he did not.

Defendant did not immediately report to the proper authorities when he had attained

a position of safety from the immediate threat of attack by the lifer. Instead, defendant traveled several miles from the penitentiary and hid on private property until found by the authorities over 24 hours after the escape. We hold the trial court was right in refusing to instruct the jury on a defense of necessity under this record and the Court of Appeals erred in reversing the trial court.

JUDGMENT OF COURT OF APPEALS VACATED AND JUDGMENT OF CONVICTION RENDERED IN DISTRICT COURT AFFIRMED.

All Justices concur except McCORMICK and LARSON, JJ., who dissent, and ALLBEE, J., who takes no part.

McCORMICK, Justice (dissenting).

The defense defined by the court today is unduly rigid. The holding is contrary to the better reasoned authorities recognizing the necessity defense; it has the effect of enlarging the crime of escape; and it is inconsistent with the defense of compulsion in the present Code.

I. *Rigidity of the defense.* The necessity defense is available to a farmer who kills a deer foraging in his corn, and it is available to a prisoner who flees prison to save his life. However, under the court's holding today the prisoner does not have the defense unless he turns himself in immediately after his escape, so far as he knows to be returned to the very danger from which he was presumably justified in fleeing. Requiring the prisoner to turn himself in once he is over the wall, on the possibility that conditions in the prison will be different when he is back inside, demands a measure of faith and sophistication of reasoning on his part which are neither realistic nor warranted.

If the jury believed defendant, as it would have a right to do, it could find he escaped three days after having his life threatened and being assaulted and sodomized at knifepoint by an imprisoned murderer. Defendant testified as follows:

Q. Can you tell the jury why you left, Michael? A. I was afraid it was going to happen again. I didn't want it to happen again so I left.

Q. Did you make any efforts after you had left to contact institutional officials? A. I thought about getting an attorney and seeing what I could work out so that I wouldn't have to be on escape, but I wasn't out long enough to contact anyone before I was recaptured.

Q. Can you tell the jury, Michael, a little bit about what you did and what you observed . . . having left the penitentiary? . . . A. Ran and hid. I just hid. Didn't do anything else. I hid in a barn for about twenty-four hours trying to stay warm and get dry.

From the testimony of prison officials the jury could find the prison was understaffed, many prisoners possessed deadly weapons, and violence among inmates could be prevented only by locking them in isolation. From defendant's testimony the jury could also find he had informed staff members of his problem on three occasions but received no help.

I believe the jury should have had the right to acquit defendant of escape if it found this evidence to be true.

II. *Persuasive authority.* Two lines of cases define the necessity defense in prison escape cases. Under the one adopted by this court today the defense is not available unless five conditions exist. The leading case for this view is *People v. Lovercamp*, 43 Cal.App.3d 823, 118 Cal.Rptr. 110 (1974).

The other line of cases defines the defense in traditional terms, recognizing the *Lovercamp* conditions as factors affecting the weight and credibility of the defendant's testimony rather than as elements which must exist for the defense to be available. Cases supporting this view include *People v. Unger*, 66 Ill.2d 333, 5 Ill. Dec. 848, 362 N.E.2d 319 (1977); *People v. Luther*, 394 Mich. 619, 232 N.W.2d 184 (1975), and *Esquibel v. State*, 91 N.M. 498, 576 P.2d 1129 (1978). Other cases which define the necessity defense in traditional terms include *Bavero v. State*, 347 So.2d 781

(Fla.App.1977); *Lewis v. State*, 318 So.2d 529 (Fla.App.1975); *Hill v. State*, 135 Ga. App. 766, 219 S.E.2d 18 (1975); *Syck v. State*, 130 Ga.App. 50, 202 S.E.2d 464 (1973), and *Pittman v. Commonwealth*, 512 S.W.2d 488 (Ky.1974).

The Illinois statute involved in *People v. Unger* is a codification of the common law necessity defense. It provides:

"Conduct which would otherwise be an offense is justifiable by reason of necessity if the accused was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct." *Id.*, 66 Ill.2d at 314, 5 Ill.Dec. at 851, 362 N.E.2d at 322, quoting Ill.Rev. Stat.1971, ch. 38, par. 7–13.

This is the rule applied in *State v. Ward*, 170 Iowa 185, 189, 152 N.W. 501, 502 (1915) ("If in this case it was reasonably necessary for the defendant to kill the deer in question in order to prevent substantial injury to his property, such fact, we have no doubt, would afford justification for the killing.").

In Michigan the defense is called "duress" instead of "necessity". The elements are those of the common law necessity defense:

A) The threatening conduct was sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm;

B) The conduct in fact caused such fear of death or serious bodily harm in the mind of the defendant;

C) The fear or duress was operating upon the mind of the defendant at the time of the alleged act; and

D) The defendant committed the act to avoid the threatened harm. *People v. Luther*, supra, 394 Mich. at 623, 232 N.W.2d at 187.

I believe we should define the necessity defense in traditional terms in prison escape cases and recognize the *Lovercamp* conditions as factors affecting the defendant's credibility but not as conditions precedent. We should do so upon the reasoning em-ployed by the Illinois court in *Unger* in facts analogous to those in the present case. There the defendant was apprehended in a motel room two days after his escape. The court said:

The preconditions set forth in *Lovercamp* are, in our view, matters which go to the weight and credibility of the defendant's testimony. The rule is well settled that a court will not weigh the evidence where the question is whether an instruction is justified. . . . The absence of one or more of the elements listed in *Lovercamp* would not necessarily mandate a finding that the defendant could not assert the defense of necessity.

By way of example, in the present case defendant did not report to the authorities immediately after securing his safety. In fact, defendant never voluntarily turned himself in to the proper officials. However, defendant testified that he intended to return to the prison upon obtaining legal advice from an attorney and claimed that he was attempting to get money from friends to pay for such counsel. Regardless of our opinion as to the believability of defendant's tale, this testimony, if accepted by the jury, would have negated any negative inference which would arise from defendant's failure to report to proper authorities after the escape. The absence of one of the *Lovercamp* preconditions does not alone disprove the claim of necessity and should not, therefore, automatically preclude an instruction on the defense. We therefore reject the contention that the availability of the necessity defense be expressly conditioned upon the elements set forth in *Lovercamp*. 66 Ill.2d at 342–343, 5 Ill. Dec. at 852, 362 N.E.2d at 323.

The difference between the *Lovercamp* rule and the *Unger* rule is one of degree. Apart from whether the defense is to be meaningful, the issue is whether juries can be trusted to find the facts. The *Unger* rule is meaningful and is based upon trust in the ability of juries to apply it. Our system depends on society's trust in juries, and history proves this trust is justified.

See *Bearbower v. Merry*, 266 N.W.2d 128, 134 (Iowa 1978).

Like the majority of the Court of Appeals, I would use the traditional definition of the necessity defense in escape cases as exemplified in the *Unger* line of authorities.

III. *Enlargement of the offense.* In addition to its rigidity the *Lovercamp* rule has the effect of enlarging the crime of escape. Under § 745.1, The Code, 1977, the gravamen of the offense is unauthorized departure from custody. *State v. Horstman*, 218 N.W.2d 604 (Iowa 1974). The offense is complete when the unauthorized departure occurs.

Thus, under the facts here the defendant's guilt depends on whether his unauthorized departure was justified by necessity. If it was reasonably necessary for him to flee the prison to save himself from sexual assault, serious injury or death, the offense of escape cannot be established.

The *Lovercamp* rule adds to the crime by taking away the defense if the prisoner remains at large after his justified but unauthorized departure. We have just held that § 745.1 does not reach unauthorized failure to return to prison. *State v. Davis*, 271 N.W.2d 693 (Iowa 1978). Permitting the crime to be proved based on conduct after the departure makes unauthorized failure to return a crime although the statute involved here does not do so.

A separate provision in the present Code conceivably will cover an unauthorized failure to return. See § 719.4(3) 1977 Code Supp.; *State v. Davis*, supra. However, a necessity defense should be available against the more serious escape charge of § 719.4(1), the analogue of former § 745.1.

The court's holding in this case makes the applicability of § 745.1 depend on conduct we have held the statute does not reach.

IV. *Inconsistency with the compulsion defense.* Another provision in the present Code illustrates the inconsistency of the court's holding. The defense of compulsion is provided in § 704.10, 1977 Code Supp., as follows:

No act, other than an act by which one intentionally or recklessly causes physical injury to another, is a public offense if the person so acting is compelled to do so by another's threat or menace of serious injury, provided that the person reasonably believes that such injury is imminent and can be averted only by his or her doing such act.

Whether this provision encompasses the traditional necessity defense as well as the common law compulsion defense remains to be decided. Cf. *People v. Unger*, supra, 66 Ill.2d at 339–340, 5 Ill.Dec. at 851, 362 N.E.2d at 322.

If § 704.10 does embrace the necessity defense, it does so by defining it in traditional terms rather than by adopting the *Lovercamp* conditions. In that event the present holding is inconsistent and can apply only to prosecutions under the former statute.

If the new statute does not incorporate the necessity defense, today's holding is still inconsistent because it requires more than the legislature does for what is at least an equivalent defense.

I would sustain the holding of the Court of Appeals.

LARSON, J., joins in this dissent.