**STATE of Iowa, Appellee,**

v.

**Jamie Allen BEESON, Appellant.**

No. 96–1247.

Supreme Court of Iowa.

Sept. 17, 1997.

Brian L. Yung and Mark D. Holmstrom of Bennett, Crimmins, Ostrander & Yung, Fort Dodge, for appellant.

Thomas J. Miller, Attorney General, Mary Tabor, Assistant Attorney General, and Cynthia Voorde, County Attorney, for appellee.

Considered by HARRIS, P.J., and CARTER, ANDREASEN, TERNUS, and SCHULTZ,* JJ.

ANDREASEN, Justice.

In this case we must determine whether administrative sanctions applied against a prisoner for escape from a correctional facility prevent a subsequent criminal action against the prisoner for escape. The trial court found the criminal action did not violate the Double Jeopardy Clause. U.S. Const. amend. V. Finding no error in the court's ruling on this and other issues raised, we affirm.

I. *Background Facts and Proceedings.*

In December, 1995, the defendant, Jamie Allen Beeson, was serving a criminal sentence at the North Central Correctional Facility (NCCF). During his incarceration at NCCF, Beeson claimed he was threatened with bodily harm and sexual assault by another inmate. As a result of the alleged

* Senior judge assigned by order pursuant to Iowa Code section 602.9206 (1997).

threat, Beeson maintains he had no alternative but to leave the correctional facility without authorization. On the 12th of December Beeson scaled the perimeter fence at NCCF and departed the facility. The next day he was found hiding in the basement of a Des Moines residence and returned to NCCF.

Upon his reincarceration at NCCF, Beeson faced disciplinary proceedings for violating six NCCF institutional rules. One of the rules he violated prohibited escape. Beeson admitted all disciplinary violations and he was sanctioned by the facility. As penalty for the violations, he was given ninety days disciplinary detention (solitary confinement), 365 days administrative segregation (separation from general prison population), loss of 215 days of good time, and ordered to make restitution in the amount of $2329.16 for the costs associated with his escape. After disciplinary sanctioning, Beeson was charged with the crime of escape in violation of Iowa Code section 719.4(1) (1995).

Beeson filed a motion to dismiss the charges based on double jeopardy protection. He argues the disciplinary action and sanctions for escape were punishment by the State and the subsequent criminal prosecution for the same offense violated his right to be free from double jeopardy. He also challenges the court's rulings on his motion for a judgment of acquittal, his request and challenge to the court's instructions to the jury, and the court's ruling on his motion for a new trial.

## II. *Double Jeopardy Claim.*

 Our review of constitutional issues is de novo. *State v. Kraklio,* 560 N.W.2d 16, 17 (Iowa 1997). Double jeopardy protections are enforced against the states through the Fourteenth Amendment of the federal constitution. *Dressler v. Iowa Dep't of Transp.,* 542 N.W.2d 563, 565 (Iowa 1996). The Double Jeopardy Clause states that no person "shall ... be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. There are three protections afforded by the Double Jeopardy Clause. These are freedom from: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the

same offense after conviction, and (3) multiple punishments for the same offense. *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187, 194 (1977). Beeson's double jeopardy claim focuses on the ban against multiple punishments for the same offense.

Until recently, it was well settled that sanctions imposed by prison authorities for violations of prison regulations did not bar a subsequent criminal prosecution for the same conduct. *Kerns v. Parratt,* 672 F.2d 690, 691 (8th Cir.1982); *United States v. Acosta,* 495 F.2d 60, 62–63 (10th Cir.1974); *United States v. Stuckey,* 441 F.2d 1104, 1105–06 (3d Cir. 1971); *Gilchrist v. United States,* 427 F.2d 1132, 1133 (5th Cir.1970); *United States v. Apker,* 419 F.2d 388 (9th Cir.1969); *United States v. Shapiro,* 383 F.2d 680, 683 (7th Cir.1967); *Hamrick v. Peyton,* 349 F.2d 370, 372 (4th Cir.1965); *Gibson v. United States,* 161 F.2d 973, 974 (6th Cir.1947). "Although due process protection is implicated, such [prison disciplinary] proceedings do not place an offender in jeopardy for purposes of the Double Jeopardy Clause." *Kerns,* 672 F.2d at 691. The double jeopardy claim has often been made in prison discipline situations and has repeatedly been rejected. *United States v. Salazar,* 505 F.2d 72, 75 (8th Cir.1974). In Iowa, we have long recognized a prisoner's administrative punishment for violation of prison disciplinary rules does not place the offender in jeopardy for double jeopardy purposes. *State v. Cahill,* 196 Iowa 486, 491, 194 N.W. 191, 194 (1923).

This well-established rule has been re-examined following *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). In *Halper,* the Supreme Court held a civil monetary penalty was so disproportionate to the harm caused to the government as to be punishment for double jeopardy purposes. In *Halper,* the Court considered "whether and under what circumstances a civil penalty may constitute 'punishment' for the purpose of double jeopardy analysis." *Halper,* 490 U.S. at 436, 109 S.Ct. at 1895, 104 L.Ed.2d at 494. The Court suggested "a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves

the goals of punishment." *Id.* at 448, 109 S.Ct. at 1901–02, 104 L.Ed.2d at 501. The Court specifically limited the reach of its holding:

> What we announce now is a rule for the rare case, the case such as the one before us, where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damage he has caused.

*Id.* at 449, 109 S.Ct. at 1902, 104 L.Ed.2d at 502.

After *Halper*, the Second Circuit suggested a prisoner may be disciplined for misconduct and may also be criminally prosecuted for the same conduct so long as the disciplinary sanctions are not grossly disproportionate to the government's interest in maintaining prison order and discipline. *United States v. Hernandez–Fundora*, 58 F.3d 802, 807 (2d Cir.1995), *cert. denied*, 515 U.S. 1127, 115 S.Ct. 2288, 132 L.Ed.2d 290. The Ninth Circuit suggested one of the reasons double jeopardy does not bar criminal prosecution for conduct that has been subject to prison disciplinary sanctions is because disciplinary sanctions are solely remedial. *United States v. Brown*, 59 F.3d 102, 104 (9th Cir.1995). Other circuits have found *Halper* did not modify the long-recognized prohibition against the application of double jeopardy as a bar of criminal prosecution for conduct that had been subject to prison disciplinary sanctions. *Garrity v. Fiedler*, 41 F.3d 1150, 1153 (7th Cir.1994); *United States v. Newby*, 11 F.3d 1143, 1146 (3d Cir.1993). Without making reference to *Halper*, the Tenth Circuit stated "[p]rison discipline hearings are not part of a criminal prosecution, . . . and therefore do not implicate double jeopardy concerns." *Lucero v. Gunter*, 17 F.3d 1347, 1351 (10th Cir.1994). These jurisdictions suggest the Double Jeopardy Clause was never intended to inhibit prison discipline. If a prison disciplinary sanction bars subsequent criminal prosecution, the prison authorities would be forced to choose between instituting a disciplinary proceeding or awaiting a criminal prosecution. This would leave prisoners who violated the prison rules without prompt resolution of the charges and would hinder prison administration and discipline. *Newby*, 11 F.3d at 1146. Prison administrators must have the ability to discipline a prisoner for violating institutional regulations, and the State must have the ability to prosecute the prisoner for the same conduct at a later date. The reasons and motives behind *Halper* do not fit the prison context. *Garrity*, 41 F.3d at 1153. The Fifth Circuit has held prison disciplinary proceedings resulting in loss of good time credit and the transfer to a higher security facility do not constitute a double jeopardy bar to subsequent prosecution without expressly stating this conclusion followed from the application of *Halper* or a determination that the *Halper* test was inappropriate. *United States v. Galan*, 82 F.3d 639, 640 (5th Cir.1996).

■ We choose to follow those circuits that believe *Halper* and subsequent double jeopardy decisions[1] do not compel a modification of the long-standing rule that sanctions imposed by prison authorities for violation of prison regulations do not bar subsequent criminal prosecution for the same conduct. In cases involving prison discipline, the *Halper* test does not apply.[2] Beeson has cited no case where prison disciplinary sanctions have prohibited subsequent criminal prosecution, and we have found no such case.

### III. *Sufficiency of Evidence.*

■ Beeson claims the trial court should have granted his motion for judgment of acquittal after he had raised the defense of necessity. We review challenges for sufficiency of the evidence for errors at law. Iowa R.App. P. 4; *State v. Arnold*, 543 N.W.2d 600, 602 (Iowa 1996). Once a defendant has properly raised the defense of ne-

---

1. *United States v. Ursery*, 518 U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996); *Witte v. United States*, 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995); *Department of Revenue v. Kurth Ranch*, 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994); *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993).

2. It makes no difference whether prison discipline sanctions are imposed before or after criminal proceedings involving the same conduct.

cessity, the State has the burden of disproving the defense beyond a reasonable doubt. *State v. Reese*, 272 N.W.2d 863, 867 (Iowa 1978). Before the defense can be submitted to the jury, the defendant must present sufficient evidence to create a fact question. *Id.* In support of his necessity defense, Beeson testified he: (1) was threatened with sexual assault or death when confronted by two inmates while he was walking around the outdoor exercise track; (2) did not have time to contact prison authorities; (3) had no opportunity to resort to the courts; (4) did not use force or violence towards NCCF employees in the escape; and (5) called NCCF when he reached Des Moines, his place of safety. He did not present evidence other than his own testimony which would tend to corroborate his defense of necessity.

 The State presented substantial evidence from which the trier of fact could conclude Beeson's escape was not motivated by necessity. The record indicates substantial planning on Beeson's part. Planning an escape is not consistent with a necessity defense. Beeson borrowed a pair of heavy gloves from another inmate the night before the escape. Prior to Beeson's escape, all of his personal effects were removed from his cell. Beeson was present at NCCF for the 11:00 a.m. standing count of inmates. He removed his personal effects from his cell before walking to the track. Shortly thereafter, at 11:42 a.m., the fence alarm sounded. Guards searching for Beeson found a folded blanket where Beeson climbed over the razor wire fence. Additionally, there was no record of NCCF receiving a call from Beeson reporting his escape. Finally, Beeson was found the day after his escape hiding in the basement of a Des Moines house. He did not immediately report himself to authorities as required by a defense of necessity. Having reviewed the record, we find there was substantial evidence to support denial of Beeson's motion for judgment of acquittal.

IV. *Jury Instructions.*

 Beeson urges the trial court erred in its instructions to the jury. He puts forth two assignments of error. First, he suggests the court should have overruled existing Iowa law and adopted a new standard for the defense of necessity. Second, he argues voluntary absence is a lesser-included offense of escape. A trial court's decision on jury instructions will not be disturbed absent an abuse of discretion. *State v. Webb*, 516 N.W.2d 824, 831 (Iowa 1994).

On the defense of necessity, the trial court instructed the jury as follows:

The defendant maintains he acted out of necessity. The defense of necessity does not negate any element of the crime of escape from a facility. Rather, the question of necessity arises only after it has been determined that a crime has occurred as defined in Instruction 10 [the instruction for escape].

Conduct which would otherwise be an offense is justified by reason of necessity if the accused was without blame in causing or developing the situation and reasonably believed such conduct was necessary to avoid an injury greater than the injury which might reasonably result from his own conduct.

However, in order to find the defendant's conduct "necessary," he must provide some evidence to all of the following conditions:

1. The defendant is faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future;

2. There is no time for a complaint to the authorities or there exists a history of futile complaints which make any result from such complaint illusionary;

3. There is no time to resort to the courts;

4. There is no evidence of force or violence used towards prison personnel or other "innocent" persons in the escape; and

5. The defendant immediately reports to the proper authorities when he has attained a position of safety from the immediate threat.

Once evidence is provided on each of the five previous conditions, it is incumbent on the State to disprove, beyond a reasonable doubt, the situation asserted by defendant

required an act of necessity. If the State fails to carry its burden, the defendant is not guilty of the crime of escape from a facility.

*See Reese,* 272 N.W.2d at 867 (adopting the five-element test for the defense of necessity).

All five conditions must be present for a successful defense of necessity. Beeson urges the court adopt a more flexible standard. The standard he proposes would allow the defense of necessity if the defendant puts forth some evidence to some, but not all of the elements. We do not find the authority Beeson presents to support his position to be persuasive. Our reasons for adopting the standard are set forth in *Reese* and they remain as valid today as they were when we decided that case. We refuse to adopt a revised standard that is only followed by a small minority of other states.

 Beeson requested an instruction stating voluntary absence is a lesser-included offense of escape. An offense is a lesser-included offense of the greater when the greater offense cannot be committed without also committing the lesser crime. *State v. Heacock,* 521 N.W.2d 707, 710 (Iowa 1994). If the lesser offense contains an element that is not part of the greater offense, the lesser cannot be included in the greater. *Id.* Escape and voluntary absence have different elements. In *State v. Burtlow,* 299 N.W.2d 665, 669 (Iowa 1980), we highlighted the difference between escape and voluntary absence as:

[s]ubsection one of section 719.4 obviously applies when a person convicted or charged with a felony intentionally departs without authority from a detention facility or institution to which the person has been committed on the conviction or charge. This is true whether the departure is accomplished through "stealth, guile or violence." 4 J. Yeager and R. Carlson, *Iowa Practice: Criminal Law & Procedure* § 426, at 110 (1979). Subsection three of the statute obviously applies when a prisoner is absent without authority from a place he's required to be, even if he has not left the premises of the institution or detention facility. *Id.,* § 428.

The crimes of escape and voluntary absence are distinct from each other and contain different elements. Therefore, voluntary absence is not a lesser-included offense of escape.

## V. *Motion for New Trial.*

 Beeson challenges the court's denial of his motion for new trial. A motion for a new trial based on newly discovered evidence should be looked upon with disfavor and granted sparingly. *Whitsel v. State,* 525 N.W.2d 860, 863 (Iowa 1994). To prevail on a claim of newly discovered evidence, a defendant must show: (1) that the evidence was discovered after the verdict; (2) that it could not have been discovered earlier in the exercise of due diligence; (3) that the evidence is material to the issues in the case and not merely cumulative or impeaching; and (4) that the evidence probably would have changed the result of the trial. *Jones v. State,* 479 N.W.2d 265, 274 (Iowa 1991). The newly discovered evidence Beeson relies on is testimony by a fellow inmate at NCCF regarding conversations the inmate had with the person who allegedly threatened Beeson. The district court found:

the new evidence offered, while certainly relevant, would be at best cumulative as relates to the record previously presented to the court. The provocation for cause of the defendant's escape was clearly presented to the jury, was not contrary or different to that evidence being offered at this time. The court would further add that this evidence was most likely available for discovery at the time of trial as the court imagines that this testimony came from a "captive" subject.

We find no error in the trial court's findings, conclusion, and ruling.

**AFFIRMED.**