ZAGER, Justice
(concurring specially).
I agree with the majority’s conclusion that voluntary absence is a lesser included offense of escape. Nevertheless, I write separately because I suspect that the statute as written was intended to cover separate and distinct offenses.
I agree with the majority’s comment that the fighting question concerns the comparison of the “intentionally left” element from the marshaling instruction for the crime of escape with the absent-from-a-place element of the crime of voluntary absence. I also agree that in determining whether these two elements share the identity necessary to make voluntary absence a lesser included offense of escape, we must ascertain their meanings. See State v. Burtlow, 299 N.W.2d 665, 668 (Iowa 1980) (indicating the issue of whether conduct falls under section 719.4(1), but *597 not section 719.4(3) raises a question of statutory interpretation). If “escape” and “absent from a place” have entirely separate meanings, absence from custody is not a lesser included offense of escape. In reading the statute, it is reasonable to conclude that these elements have separate meanings.
Iowa Code section 719.4(1) does not define what it means to “escape.” We have said an escape is an intentional departure without authority from a detention facility or other institution. See Burtlow, 299 N.W.2d at 669 (explaining when the escape statute applies). Black’s Law Dictionary defines “escape” as “[t]he departure ... out of custody of a person who was lawfully imprisoned before he is entitled to his liberty by the process of law.” Black’s Law Dictionary 544 (6th ed.1990). As the majority notes, escape and absence from custody conjure different images. It is not only these different images, but also the different language in the separate provisions that might lead a court to conclude the legislature intended to create two distinct offenses.
Iowa has made escape a statutory crime since at least 1851. See Iowa Code § 2667 (1851). However, prior to the complete rewrite of the Iowa Criminal Code in 1976, our statute made no criminal distinction between escape from a penitentiary or being out of a place from where the warden allowed the prisoner to be, whether inside or outside of the prison walls. See id. § 745.1 (1975). While not specifically mentioning escape as a felony, a person guilty of escape was punished by imprisonment for a term of not to exceed five years. See id.
The legislature also enacted separate statutes to punish the unauthorized failure to return to a place or facility. State v. Davis, 271 N.W.2d 693, 696 (Iowa 1978) (noting distinction between escape and statutes addressing unauthorized failure to return). Specifically, Iowa Code section 247A.6 provided:
Any inmate released from actual confinement under a work release plan who willfully fails to return to the designated place for housing at the time specified in the plan shall be guilty of a felony and upon conviction be subject to the penalty provided in section 745.1.
By these statutory enactments, it is clear that the legislature intended there to be harsh consequences for escape from custody, whether from a secured facility or a failure to return from a furlough. The penalties were the same: a felony with up to five years imprisonment. See id. § 745.1.
The legislature overhauled the law of escape in 1976 as part of its comprehensive rewrite of the Iowa Criminal Code. In the process, the legislature attempted to delineate the various concepts of escape. See id. § 719.4 (1979); see also Burtlow, 299 N.W.2d at 669 (noting the new statute delineated separate escape offenses). What is significant, however, is that the statute itself was changed on several occasions since its initial enactment, particularly subsection 3.
The initial language of subsection 3 used the language “voluntarily absents.” 1976 Iowa Acts eh. 1245, ch. 1, § 1904(3) (codified at Iowa Code § 719.4(3) (1979)). The 1985 amendment changed the language to “voluntarily leaves.” Iowa Code § 719.4(3) (1985) (emphasis added). Then in 1986, the legislature made the most substantive change in subsection 3. The legislature removed the language “leaves” a place and substituted “is absent from,” such that the statute punishes a person who “is absent from a place where the person is required to be.” 1986 Iowa Acts ch. 1238, § 30 (codified at Iowa Code § 719.4(3) (1987)). This court previously concluded the 1986 *598 change to the statute was an error correction. See State v. Francois, 577 N.W.2d 417, 419 (Iowa 1998). In that case, however, the court did not consider whether the change affected the criminal conduct under Iowa Code section 719.4(3) (1995) as it related to the criminal act of escape under Iowa Code section 719.4(1), as we must in this case. See id. (concluding the change in statutory language does not indicate the crime of absence from custody is a continuing offense).
The elimination of “leaves” in the context of the escape statute is important for several reasons. First, the legislature removed the necessity of having to physically leave a place where a person has been committed to custody in order to be guilty of voluntary absence from a place as defined in Iowa Code section 719.4(3) (1987). We presume that the legislature has a reason for substituting one word for another when it changes a statute. See Midwest Auto. Ill, LLC v. Iowa Dep’t of Transp., 646 N.W.2d 417, 425 (Iowa 2002) (“[A] material modification of statutory language raises a presumption that a change in the law was intended.”); State v. Ahitow, 544 N.W.2d 270, 273 (Iowa 1996) (“[A]ny material change in the language of a statute is presumed to alter the law.”). Here, it is reasonable to assume the legislature intended that the crime is for being out-of-placement, rather than leaving custody.
Second, the crime of voluntary absence is a serious misdemeanor while the crime of escape is a class “D” felony. Compare Iowa Code § 719.4(3) (2011) (punishing voluntary absence as a serious misdemean- or), with id. § 719.4(1) (punishing escape as a class “D” felony). A class “D” felony carries the possibility of five years imprisonment. Id. § 902.9(5). In contrast, a person convicted of a serious misdemeanor faces at most one year imprisonment. Id. § 903.1(1)(6). The need for a different punishment is tied to the view that an escape from custody presents a far greater danger to the public than merely being out-of-placement. See Burtlow, 299 N.W.2d at 669 (explaining the reasoning behind punishing these two types of conduct differently). This is precisely why I believe the legislature intended to create two separate and distinct crimes with two separate and distinct punishments. To include a crime for being out-of-placement with our general escape statute would be duplicative and redundant. We assume that the legislature does not write statutes that are duplicative and redundant. See Hardin Cnty. Drainage Dist. 55, Div. 3, Lateral 10 v. Union Pac. R.R., 826 N.W.2d 507, 512 (Iowa 2013) (explaining that when ascertaining legislative intent, we interpret the statute so that no part of it is redundant or irrelevant). We also have to interpret the entire statute and give effect to its various parts. See State v. Romer, 832 N.W.2d 169, 176 (Iowa 2013) (explaining that when interpreting statutes, we must evaluate the entire statute). Applying our rules of statutory construction, a court could conclude the difference in possible prison terms imposed for these offenses indicates a legislative intent to create two separate and distinct crimes. Until today, that conclusion would have been reasonable.
It is also important to note that our court had the benefit of this most recent statutory language on escape when it decided State v. Beeson, 569 N.W.2d 107 (Iowa 1997). As in this case, Beeson had requested an instruction stating voluntary absence was a lesser included offense of escape. See id. at 112. As the majority states in this case, we explained in Beeson that “[a]n offense is a lesser-included offense of the greater when the greater offense cannot be committed without also committing the lesser crime.” Id. Our *599 court concluded that escape and voluntary absence have different elements, and it highlighted the differences as follows:
“[sjubsection one of section 719.4 obviously applies when a person convicted or charged with a felony intentionally departs without authority from a detention facility or institution to which the person has been committed on the conviction or charge. This is true whether the departure is accomplished through stealth, guile or violence. Subsection three of the statute obviously applies when a prisoner is absent without authority from a place he’s required to be, even if he has not left the premises of the institution or detention facility.”
Id. (quoting Burtlow, 299 N.W.2d at 669) (citation and internal quotation marks omitted).
In modern day corrections, there is clearly a difference between the concept of being absent from a place a person is required to be and the traditional notion of escape. With residential facilities now an integral part of corrections, there are a multitude of reasons for a person committed to such a facility to be absent, to be away, or to not be present at such a facility, none of which constitute an escape from custody. Examples include work, training, school, job search, or even an authorized visit to a significant other. Subsection 3 was designed to handle situations where an individual is away from the facility, ostensibly to go to a specific location or for a particular reason, and ends up where he or she is not authorized or supposed to be. I think it is unreasonable to conclude that “place” under subsection 3 necessarily includes the facility itself. Otherwise, why is there a need for a separate statute for escape that provides for a different penalty? When does a voluntary absence ever become an escape or vice versa? Can each day an individual is absent from a facility, or each bed check, become a separate crime of voluntary absence? If so, Miller was arrested nineteen days after he originally left the facility. Therefore he could potentially be charged with nineteen counts of voluntary absence and face up to nineteen years of incarceration. Under this scenario, why would a county attorney ever file an escape charge when it would be so much easier to simply file a multiple-count trial information for voluntary absence? [11]
There is a split of authority as to whether a prisoner who fails to return to custody following an unsupervised, permissive release from custody can be prosecuted under a broadly worded escape statute. See Annotation, Failure of Prisoner to Return at Expiration of Work Furlough or Other Permissive Release Period as Crime of Escape, 76 A.L.R.3d 658, 682-87 (1977) (describing cases in which prisoners have been held to be or not to be escapees for failing to return following a work release); 4 Wharton’s Criminal Law § 633 (15th ed.2013), available at http://www.westlaw. com (updated 2013) (compiling cases in which prisoners have been, or have not been, held to have committed escape by not returning to prison). As would be expected, the result often depends on the wording of the various state statutes involved.
Having said all this, however, and looking at the statute as written, I must agree *600 that under the analysis of the majority, voluntary absence is a lesser included offense of escape. If the legislature intends that an offense of this nature should be a separate and distinct crime for purposes of our escape statute, then it must more clearly define this in the statute. Until then, any voluntary absence may or may not be a lesser included offense of escape, as the majority opinion acknowledges. Without clarification, trial judges are left in the unenviable position of attempting to accurately instruct the jury and offering little assistance to the jury in reaching its decision.

. Although State v. Francois considered whether absence from custody is a continuing offense, it did so to address the narrow question "whether the crime of absence from custody is a continuing offense for purposes of tolling the statute of limitations.” 577 N.W.2d 417, 417 (1998). Thus, the court was careful to narrow the holding of the case to its facts. See id. at 421 (holding absence from custody "is a continuing offense for purposes of the statute of limitations”).