# IN THE COURT OF APPEALS OF IOWA

No. 19-1350
Filed August 5, 2020

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MATTHEW DON FARBER,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Guthrie County, Richard B. Clogg,

Judge.


        Defendant appeals his convictions for operating while intoxicated, failure to

maintain control, and failure to obey a traffic control device. **AFFIRMED.**


        Jeffrey N. Bump of Bump & Bump, LLP, Panora, for appellant.

        Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney

General, for appellee.


        Considered by Bower, C.J., and Doyle and Schumacher, JJ.

**SCHUMACHER, Judge.**

Matthew Farber appeals his convictions for operating while intoxicated, failure to maintain control, and failure to obey a traffic control device. There is substantial evidence in the record to support the convictions. We affirm the convictions.

## I.      Background Facts & Proceedings

Farber spent the afternoon and evening of December 29, 2018, with his nephew, Kelly Pierce. Farber was driving his pickup with Pierce as a passenger. At about 3:00 p.m. they went to the home of David Weeks near Stuart to look at an engine. Weeks testified that Farber and Pierce were each carrying a beer can and that they told him the beer was frozen. Weeks did not see them drink any beer during the forty-five to sixty minutes they were at his home. He stated they did not appear to be intoxicated.

Farber and Pierce went to Short's, a bar in Menlo, after leaving Weeks's home. Farber had a beer. They played pool and stayed about one hour. The bartender testified she did not think Farber had been drinking before he came to the bar.

At about 5:00 to 5:30 p.m., Farber and Pierce arrived at Johnie's Tap in Stuart. Allison Punelli testified she served Farber two beers before her shift ended at 6:00 p.m. Danielle King, who had the shift after Punelli, testified she served Farber two or three beers. She stated Farber did not appear to be drunk, although she thought Pierce was intoxicated. King called the police about an altercation between some other patrons, and most of the people in the bar left at about 7:45 p.m. Farber agreed to give a ride to Christie Watson, who had too much to

drink. Farber dropped Watson off at her home near Menlo at about 8:00 p.m. Watson testified she did not notice if Farber was intoxicated.

At some point after dropping off Watson, Farber was in a single-car accident in rural Guthrie County. About 131 feet past a stop sign on a gravel road, a distance of approximately seven and a half lengths of his vehicle, Farber's vehicle left the road at a high rate of speed, launched over a creek, struck the supports for a bridge, and nosedived into an embankment, catapulting itself onto its top, where it came to rest. Farber and Pierce were stuck inside the vehicle, unable to move. Both were injured.

Joshua Murphy came upon the vehicle later that evening and saw there had been a bad crash. He did not believe there would be any survivors based on the severity of the crash. He testified he smelled beer as he walked up to the vehicle. Murphy then heard the occupants calling for help. He stated one of the men told him not to call 911. Murphy called 911 anyway because assistance was needed to get the men out of the pickup. The men told him a deer ran in front of them. Murphy stayed at the scene and stated it took about one hour to get the men out of the vehicle using hydraulic rescue tools.

Deputy Blake Michelsen of the Guthrie County Sheriff's Department received a call at 10:30 p.m. about the accident. At the scene, he saw beer cans that had been opened. Deputy Michelsen did not see any brake or skid marks, but it appeared the pickup had drifted off the road going between fifty to sixty miles per hour. He did not see any signs of deer. He thought that by the time Farber and Pierce were taken out of the pickup, they had been trapped in the vehicle for two to three hours. Deputy Michelsen stated Farber had an overwhelming odor of

alcohol from his breath and bloodshot, watery eyes.  Farber refused a preliminary breath test, stating he would fail the test.  Deputy Michelsen believed Farber was impaired.

Farber was taken to the hospital where he was treated for his injuries.[1]  A State Trooper read him the implied consent advisory.  Farber discussed the matter with his wife, then refused a blood test.

The next day, Deputy Kent Gries went to the scene to review it in daylight. He observed about thirty beer cans.  He stated the majority of the cans had been opened, although some remained closed and some had been crushed in the accident.  Deputy Gries testified the scene was not consistent with a car-deer accident

> [b]ecause to generate the amount of force involved in the collision and destruction of this vehicle, it was consistent with somebody running a stop sign at a high rate of speed and then driving off the east side of the road and then going airborne and landing upside down from the pictures I saw from Deputy Michelsen.  Could there have been a deer?  Sure.  But this was a stop sign that was run at a high rate of speed for sure.  I mean I have no doubt in my mind.

Deputy Gries stated the accident was consistent with impaired driving because there was a slow fade off the road while going straight.

Farber was charged with operating while intoxicated (OWI), first offense, in violation of Iowa Code section 321J.2(2)(a) (2018), a serious misdemeanor; failure to maintain control, in violation of section 321.288(1), a simple misdemeanor; and failure to obey a traffic control device, in violation of section 321.256, a simple misdemeanor.

---

[1]  Pierce was also taken from the scene and treated for serious injuries.

The case was tried to the bench. Pierce testified he did not remember much about the crash. He stated he heard Farber mention deer. Pierce stated they had a case of Miller High Life containing thirty cans of beer. He stated the beer froze while in the bed of the pickup so they put it behind the seat in the cab. Pierce stated these cans broke during the crash, causing the scene to smell like beer. He also stated that he and Farber only drank alcohol while at Short's and Johnie's Tap.

On June 24, 2019, the district court entered a decision finding Farber guilty of OWI, failure to maintain control, and failure to obey a traffic control device. The court found Farber "actively consumed alcohol" on December 29, 2018. The court noted that, "[b]ased on his training, experience and observations, Deputy Michelsen believed Defendant Farber was under the influence of alcohol when he observed him at the scene." The court found there was no evidence Farber consumed alcohol after the accident. In addition, the court found that if Farber had stopped at the stop sign, he would not have been going fast enough by the time the pickup went off the road to cause the vehicle to jump the creek. The court also found there was no evidence of skid marks or braking before the pickup left the road.

Farber filed a motion in arrest of judgment and motion for new trial, which were denied by the district court. On the OWI charge, Farber was sentenced to 365 days in jail with all but thirty days suspended and placed on probation for one

year.  For the two simple misdemeanors, Farber was ordered to pay a fine of $100 for each offense.  Farber appeals his convictions.[2]

## II.     Sufficiency of the Evidence

Farber contends there is insufficient evidence in the record to support his convictions.  On sufficiency-of-the-evidence claims, our review is for the correction of errors of law.  *State v. Folkers*, 941 N.W.2d 337, 338 (Iowa 2020).  "The district court's findings of guilt are binding on appeal if supported by substantial evidence.  Evidence is substantial if it would convince a rational trier of fact the defendant is guilty beyond a reasonable doubt."  *Id.* (citations omitted).

**A.**     For the offense of operating while intoxicated, the State was required to prove "two essential elements: (1) the operation of a motor vehicle (2) while under the influence of alcohol."  *State v. Boleyn,* 547 N.W.2d 202, 204 (Iowa 1996) (citing Iowa Code § 321J.2).  Farber does not challenge the issue of whether he was driving a motor vehicle but claims the State did not present sufficient evidence to show he was under the influence of alcohol at the time he was driving, citing *State v. Creighton*, 201 N.W.2d 471, 472–73 (Iowa 1972); *State v. Lowery*, No. 15-0217, 2015 WL 9451068, at *4–5 (Iowa Ct. App. Dec. 23, 2015); and *State v. Payne*, No. 10-1349, 2011 WL 1818061, at *3 (Iowa Ct. App. May 11, 2011).

In each of these cases, a defendant was in an accident and some period of time elapsed before assistance arrived, such that it was possible the defendant had consumed alcohol in the interval between when the defendant stopped driving

---

[2]  Farber applied for discretionary review of the simple-misdemeanor convictions. *See* Iowa Code § 814.6(1)(a)(1); Iowa R. App. P. 6.106.  The Iowa Supreme Court granted the application for discretionary review.  The court determined the cases should be consolidated for appeal.

and when the defendant interacted with officers. *See Creighton*, 201 N.W.2d at 473 (stating that evidence "a defendant was under the influence of an alcoholic beverage at the time of his arrest, without a showing of more, will not support a finding he was in that condition when driving a motor vehicle at some earlier time"); *Lowery*, 2015 WL 9451068, at *4 (finding that evidence of an empty liquor container could show defendant consumed the liquor after he went into a ditch, resulting in his intoxication, rather than showing he was driving while intoxicated); *Payne*, 2011 WL 1818061, at *3 (finding that due to the time between when the accident occurred and when defendant interacted with officers, the State did not present sufficient evidence to show defendant was driving while intoxicated).

Here, the State made a showing of more evidence than that Farber was under the influence of an alcoholic beverage at the time of his arrest. *See Creighton*, 201 N.W.2d at 473. Farber had five or six beers before the accident— one at Short's and four or five at Johnie's Tap. Furthermore, unlike in *Creighton*, where the court said it had "no way of knowing . . . what transpired between the time of the accident and the time of arrest," Pierce provided testimony about this time period. *See id.* Pierce stated that while they were waiting for help in the upside-down pickup, he could "barely'" move and Farber could not move "very much." Pierce added that Farber was lying in a fetal position on the top of the truck. Pierce also testified that the only alcohol he and Farber consumed was at Short's and Johnie's Tap. The evidence in this case does not support the contention that Farber became intoxicated after he was no longer driving the pickup.

In addition, there was substantial evidence to show Farber was intoxicated. Murphy testified he could smell beer as he walked up to the pickup. He also testified that one of the men in the vehicle told him not to call 911. Deputy Michelsen testified Farber had "an overwhelming odor of an alcoholic beverage coming from his breath, and he also had red watery bloodshot eyes." *See State v. Morgan*, 877 N.W.2d 133, 137 (Iowa Ct. App. 2016) ("[C]ommon indicia of intoxication include an odor of alcohol, bloodshot and watery eyes, slurred speech, and an uncooperative attitude." (quoting 61A C.J.S. *Motor Vehicles* § 1518 (2016)). He stated this odor was coming from Farber's breath, not his person. Farber refused a preliminary breath test, stating he would fail. Deputy Michelsen and Deputy Gries testified about the opened beer cans found at the scene of the accident.

We conclude there is substantial evidence in the record to support Farber's conviction for OWI.

**B.** Farber claims there is not sufficient evidence in the record to show he failed to maintain control of the vehicle. For this offense, the State was required to show Farber was operating a motor vehicle and failed to maintain control of it. *See* Iowa Code § 321.288. A vehicle is under control if the driver "has the ability to guide and direct its course of movement, fix its speed, and can, if the occasion demands, bring it to a stop with a reasonable degree of celerity." *Hamdorf v. Corrie*, 101 N.W.2d 836, 845 (Iowa 1960).

Farber does not dispute that he was driving the pickup at the time of the accident. He also does not dispute that he lost control of the vehicle. He claims, however, that he went off the road because he swerved to avoid hitting a deer,

raising the defense of necessity or legal excuse. The necessity defense applies "in emergency situations where the threatened harm is immediate and the threatened disaster imminent." *State v. Walton*, 311 N.W.2d 113, 115 (Iowa 1981). The defense does not negate any elements of an offense. *State v. Reese*, 272 N.W.2d 863, 866 (Iowa 1978). It may apply to forces of nature. *Id.*

"[T]he credibility of witnesses is for the factfinder to decide except those rare circumstances where the testimony is absurd, impossible, or self-contradictory." *State v. Neitzel*, 801 N.W.2d 612, 624 (Iowa Ct. App. 2011). In considering whether there is substantial evidence to support a verdict, "we consider 'all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'" *State v. Schiebout*, 944 N.W.2d 666, 670 (Iowa 2020) (citation omitted).

The district court, as the factfinder, rejected Farber's claim that he swerved off the road to avoid hitting a deer. This finding is supported by the evidence. Deputy Michelsen testified there were no brake or skid marks on the road. Both deputies said it appeared the car gradually went off the road at a high rate of speed, which was not consistent with a deer-car accident. Viewing the evidence in the light most favorable to the prosecution, we find there is substantial evidence in the record to support the district court's conclusion that Farber failed to maintain control of his vehicle.

**C.** Farber contends there is insufficient evidence in the record to support his conviction for failure to obey a traffic control device. He asserts the State did not present substantial evidence to show he failed to stop at a stop sign near the accident scene.

In the direction Farber was travelling, there was a stop sign 131 feet before his pickup went off the road. According to the officers, the vehicle went off the road within such a short distance after the stop sign that it would not have been possible to reach the speeds necessary to cause the degree of destruction sustained by the vehicle if it had stopped. Deputy Michelsen stated he believed the pickup was going fifty to sixty miles per hour and had not stopped at the stop sign. He stated, "That's the only way I can reasonably assume that the vehicle could have managed to go over the creek." Deputy Gries stated, "[T]his was a stop sign that was run at a high rate of speed for sure. I mean I have no doubt in my mind."

Farber's vehicle went off the road with such speed and force that it went over a creek, struck the supports for a bridge, and flipped upside down. Murphy testified he believed the occupants of the vehicle were probably dead because of the severity of the crash. Deputy Michelsen said it was one of the five worst crashes he had seen and he did not think anyone would be alive.

We conclude there is substantial evidence in the record to support the district court's finding that Farber failed to obey a traffic control device.

We affirm Farber's convictions.

**AFFIRMED.**