**STATE of Iowa, Appellant,**

v.

**Chadwick David HIPPLER, Appellee.**

No. 95-873.

Supreme Court of Iowa.

March 20, 1996.

Rehearing Denied March 20, 1996.

Thomas J. Miller, Attorney General, Ann E. Brenden, Assistant Attorney General, J. Patrick White, County Attorney, and Linda M. Paulson, Assistant County Attorney, for appellant.

John M. Priester, Public Defender's Office, Iowa City, for appellee.

LAVORATO, Justice.

Iowa Code section 707.8(1) (1993) provides that "[a] person who terminates a human pregnancy without the consent of the pregnant person during the commission of a felony or felonious assault is guilty of a class 'B' felony." The State charged defendant Chadwick David Hippler under this section. Hippler allegedly stole a vehicle that was involved in a collision with a car driven by Jean Fisher. Because of the collision, the fetus Fisher was carrying had to be delivered by caesarean section. The accident terminated the pregnancy. Additionally, Fisher and her husband, a passenger in her car, were both injured.

After the State and Hippler stipulated to certain facts, the district court sustained Hippler's motion to dismiss on several grounds. The State appealed. We affirm because there was no nexus between the theft of the automobile and the termination of the pregnancy.

### I. Background Facts.

For the purpose of the motion to dismiss, the State and Hippler stipulated to the following facts. On December 2, 1994, a Pontiac Firebird was reported stolen in Muscatine, Iowa. One week later, Hippler was driving the Firebird in Iowa City. The value of the Firebird was in excess of $10,000. The theft therefore constituted a felony.

The Firebird came to the attention of an Iowa City police officer because Hippler was driving it erratically. The officer ran a check on the Firebird and verified that it had been stolen. At this point, the officer maneuvered his squad car behind the Firebird and turned on his top lights.

Hippler ignored the officer and sped away. Hippler lost control of the Firebird, spun around into oncoming traffic, and collided with Fisher's car. Fisher was about thirty weeks pregnant at the time.

Because of injuries Fisher sustained in the accident, the fetus she was carrying died in utero. The fetus was delivered by caesarean section shortly after the accident. Fisher's husband, who was a passenger in her car, also sustained injuries in the accident.

## II. *Background Proceedings.*

The State's amended trial information against Hippler was in five counts. Count I was for theft in the first degree. *See* Iowa Code §§ 714.1(1), 714.1(4), 714.2(1). Count II was for eluding or attempting to elude a law enforcement vehicle. *See* Iowa Code § 321.279. Counts III and IV were for serious injury by vehicle. *See* Iowa Code §§ 707.6A(3), 707.6A(1)(b), 707.6A(1)(c), 321J.1(8). Count V was for nonconsensual termination of a human pregnancy. *See* Iowa Code § 707.8(1).

Count V alleged the following:

NONCONSENSUAL TERMINATION OF A HUMAN PREGNANCY committed as follows: The said Chadwick David Hippler on or about the 9th day of December, A.D., 1994, in the County of Johnson, State of Iowa, did terminate a human pregnancy without the consent of the pregnant person during the commission of a felony or felonious assault, to-wit: Defendant while possessing and driving a Pontiac Firebird he knew to be stolen crashed into a vehicle driven by Jean Fisher who was pregnant at the time of the collision. Jean Fisher's pregnancy was terminated without her consent with the death of the Fisher infant due to injuries sustained in the collision, in violation of [Iowa Code] section 707.8(1).

Hippler pleaded not guilty to all counts. Over the State's resistance, the district court sustained Hippler's motion to dismiss Count V.

## III. *Scope of Review.*

■ The proper meaning of a statute is a legal question. Our review is therefore at law. Iowa R.App.P. 4.

## IV. *The Issues.*

As we mentioned, the district court sustained Hippler's motion to dismiss on several grounds. First, the court ruled that the underlying felony—in this case theft—had to be a forcible felony. Because theft is not a forcible felony, the court ruled it could not be a basis to support the charge of nonconsensual termination of a human pregnancy.

Second, the court ruled there had to be at least a nexus between the underlying felony and the termination of the pregnancy. The court concluded the stipulated facts showed no such nexus.

Later in a supplemental ruling, the court rescinded this part of its ruling. The court noted that the State had alleged the exercising control alternative of theft. The court reasoned that while the taking of the motor vehicle was a one-time event, it could be argued that exercising control over the stolen vehicle was a continuing, ongoing felonious act.

Last, the court ruled that there had to be a causal connection between the underlying felony and the termination of the pregnancy. And, here too, the court concluded the stipulated facts showed no such connection.

We assume without deciding that, contrary to the district court's first ruling, the underlying felony need not be a forcible felony. We turn our attention to the district court's second ruling regarding the nexus between the underlying felony of theft and the termination of the pregnancy.

A. *Applicable law.* Iowa Code section 707.8(1) provides that

[a] person who terminates a human pregnancy without the consent of the pregnant person *during the commission of a felony* or felonious assault is guilty of a class "B" felony.

(Emphasis added.) In pertinent elemental terms, the nonconsensual termination of a human pregnancy occurs through (1) the termination, (2) of a human pregnancy, (3) without the consent of the pregnant person, (4) during the commission, (5) of a felony.

B. *The merits.* Section 707.8(1) definitely requires a nexus or link between the underlying felony and the termination of the pregnancy. The nexus requirement is expressed in the phrase "during the commission of a felony or felonious assault."

One court addressed a similar nexus requirement in the context of a felony-murder statute. *See Doane v. Commonwealth,* 218 Va. 500, 237 S.E.2d 797 (1977). The Virginia felony-murder statute provided in part: "The killing of one accidentally, contrary to the

intention of the parties, *while in the prosecution of some felonious act* ... is murder of the second degree...." *Id.* at 798 n. 1 (emphasis added). The italicized portion constituted the nexus requirement in this statute.

In *Doane,* the facts were these. The defendant stole a car. The next day, while driving the stolen car in another county some 280 miles away, the defendant drove through a stop sign and collided with a pickup truck. A passenger was thrown from the pickup truck and killed. The trial court ruled that at the time of the accident the defendant was engaged in the prosecution of a felonious act, either grand larceny of the car or the lesser included offense of an unauthorized use of the car. The court found the defendant guilty of second-degree murder under the above-quoted felony-murder statute.

The State conceded there had to be at least a nexus between the felonious act—larceny of the car—and the killing to establish a violation under the statute. The State pointed out that "larceny is a continuing offense 'and is being committed every moment of the time during which the thief deprives the owner of the stolen property or its possession.'" *Id.* at 798. The State argued that

> the defendant, who continued to possess and use the car in derogation of the rights of the lawful owner, was still in the prosecution of a felonious act at the time of the accident resulting in [the victim's] death. The nexus is provided ... because the automobile was "the instrumentality of continued asportation and the killing, as well as the subject matter of the larceny."

*Id.*

The *Doane* court agreed with the State that there is a continuing offense concept regarding larceny. The court viewed that concept as a fiction of common law to support venue in the county where the stolen property is taken. *Id.* The court, however, refused to extend this fiction in support of venue to satisfy the nexus requirement—while in the prosecution of some felonious act—of Virginia's felony-murder statute.

■ Like Virginia, Iowa has a common law continuing offense concept to support venue. *See State v. Bennett,* 14 Iowa 479, 481–82 (1863) (recognizing continuing offense concept to support venue in absence of statute where stolen property was brought into Iowa from another state). As the *Doane* court did with its felony-murder statute, we, too, refuse to extend the common law fiction in support of venue to satisfy the nexus requirement in section 707.8(1) with respect to the taking alternative of theft. *See* Iowa Code § 714.1(1) ("A person commits theft when the person does any of the following: 1. Takes possession or control of the property of another...."). Without this fiction, the stipulated facts establish as a matter of law no nexus between the taking alternative of theft and the accidental termination of Fisher's pregnancy one week later. The taking was complete one week before the accident. In other words, the termination of the pregnancy did not occur during the taking of the Firebird.

■ Our inquiry, however, does not end here. As the district court noted, the State in Count V alleged—as the underlying felony—theft by exercising control over stolen property. *See* Iowa Code section 714.1(4) ("A person commits theft when the person does any of the following: ... 4. Exercises control over stolen property, knowing such property to have been stolen, or having reasonable cause to believe that such property has been stolen...."). The court further noted that Hippler's possession of the stolen Firebird, that is, exercising control over it, could arguably be "a continuing, ongoing felonious act." If it is, then we agree that there could be a sufficient nexus between the underlying theft and the termination of Fisher's pregnancy. But for reasons that follow, we conclude as a matter of law that Hippler's possession was not a continuing, ongoing felonious act.

Because the nexus here—during the commission of a felony—is a temporal one, the most analogous cases are those dealing with the concept of continuing offense in the context of a statute of limitations issue. Wyoming has a theft statute with the following alternative: knowingly exerting unauthorized

control over another's property and then concealing it. This alternative is similar to the alternative of possession or exercising control over stolen property in our theft statute. *See* Iowa Code § 714.1(4).

Recently, the Wyoming Supreme Court squarely addressed the issue whether the Wyoming alternative of knowingly exerting unauthorized control is a continuous, ongoing felonious act in the context of a statute of limitations question. *See State v. Mullin,* 268 Mont. 214, 886 P.2d 376 (1994). The State argued that this alternative

> is a continuing course of conduct and that the offense was not yet "committed ..." until the stolen property was discovered pursuant to the execution of the State's search warrant. Therefore, the five-year statute of limitations for felony theft had not yet expired.

*Id.* at 377–78. The court rejected this argument. In doing so, the court relied on the following rule:

> A particular offense should not be construed as continuing "unless the *explicit language of the substantive criminal statute compels such a conclusion,* or the nature of the crime involved is such that [the legislature] must assuredly have intended that it be treated as a continuing one."

*Id.* at 378 (citing *State v. Hamilton,* 252 Mont. 496, 830 P.2d 1264, 1267 (1992) (quoting *Toussie v. United States,* 397 U.S. 112, 115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156, 161 (1970))); *accord* 22 C.J.S. *Criminal Law* § 200, at 245 (1989).

Looking to its theft statute, the court in *Mullin* found no language in it that said theft is a continuing offense. Further, the court concluded, the nature of the crime did not compel a conclusion that the legislature intended the crime to be treated as continuous. To accept the State's argument, the court reasoned,

> would be to hold, in effect, that there is no statute of limitations applicable to the crime of theft unless the stolen property is abandoned. We decline to do so. Such an extreme departure from the plain language

of our statute of limitations ... is better left to the Legislature.

*Mullin,* 886 P.2d at 378.

Other courts have likewise held in the context of a statute of limitations issue that theft is not a continuing offense under the possession or exercising control alternative of theft. *See, e.g., United States v. Mendoza,* 122 F.Supp. 367, 367–68 (N.D.Cal.1954) (under statute making criminal intent element of crime of retaining property known to be stolen from the United States, there was no continuing offense in continuing retention of property, and statute of limitations commenced running from time defendant first retained property with necessary intent); *State v. Webb,* 311 So.2d 190, 191 (Fla.Dist. Ct.App.1975) (crime of receiving and concealing stolen property is not a continuing offense and statute of limitations begins to run when crime is complete: when property is received and concealed with knowledge that the same is stolen); *State v. Palmer,* 248 Kan. 681, 810 P.2d 734, 741 (1991) ("The crime of theft ... [by obtaining unauthorized control over property] is not a continuing offense."); *People v. Steinmann,* 57 Ill. App.3d 887, 15 Ill.Dec. 411, 415–16, 373 N.E.2d 757, 761–62 (1978) (exerting unauthorized control over property is not a continuing offense); *contra State v. Lawrence,* 312 N.W.2d 251, 253 (Minn.1981) (possessing stolen property is a continuing offense).

Our theft statute does not expressly state that the possession or exercising control alternative of the theft statute is a continuing offense. Nor do we feel the nature of the crime compels a conclusion that the legislature intended this crime to be treated as a continuing offense for purposes of the statute of limitations. Like the Wyoming court and those courts that agree with it, we think such a construction is unreasonable and extreme. The statute of limitations could never apply unless the defendant abandoned the property. Although bereft of any analysis, one of our old cases has reached the same conclusion as the *Mullin* court. *See State v. Friend,* 210 Iowa 980, 986, 230 N.W. 425, 428 (1930).

The policy reasons for refusing to engraft the continuous offense concept on to a sub-

stantive criminal statute—like theft—for statute of limitations purposes apply with equal force to the nexus requirement in the termination of pregnancy offense. To do so would yield absurd and unintended results. For example, under the exercising control alternative of the theft statute, prosecutions like the one here could be brought years after the original taking. The issue in such prosecutions would necessarily involve presentation of stale evidence. Such prosecutions could also put defendants in the untenable position of not being able to obtain evidence for a proper defense. We do not think the legislature intended criminal consequences in such circumstances. We conclude the theft as alleged in Count V had been completed before the accident resulting in the termination of Fisher's pregnancy.

Our conclusion on the nexus issue eliminates any need for us to address the causal connection issue.

## V. *Disposition.*

The district court correctly dismissed Count V against Hippler under Iowa Code section 707.8(1). As a matter of law, the theft as alleged in Count V had been completed before the accident resulting in the termination of the pregnancy occurred. The termination of the pregnancy did not occur during the commission of a felony. Accordingly, we affirm.

**AFFIRMED.**

ANDREASEN, J., takes no part.