STATE of Iowa, Appellant,

v.

Marla Kay FRANCOIS, Appellee.

No. 97–880.

Supreme Court of Iowa.

April 22, 1998.

Thomas J. Miller, Attorney General, Mary Tabor, Assistant Attorney General, Thomas S. Mullin, County Attorney, and Rhoda Ganzel, Assistant County Attorney, for appellant.

Frank Cosgrove, Sioux City, for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, NEUMAN, and TERNUS, JJ.

TERNUS, Justice.

The sole question presented on this appeal is whether the crime of absence from custody is a continuing offense for purposes of tolling the statute of limitations. *See* Iowa Code §§ 719.4(3) (absence from custody), 802.7 (effect of continuing offense on statute of limitations) (1995). Because we hold that this crime is a continuing offense, we conclude the district court erred in dismissing the trial information on statute-of-limitations grounds. Therefore, we reverse and remand for further proceedings.

## I. *Background Facts and Proceedings.*

On August 2, 1988, the Iowa District Court for Woodbury County held the defendant, Marla Kay Francois, in contempt of court for violating her probation in connection with a false-use-of-a-financial-instrument charge. *See* Iowa Code § 908.11 (contempt statute). The court sentenced Francois to fourteen days in the Woodbury County jail, but withheld mittimus until 9:00 a.m. on September 16, 1988. Francois failed to present herself on that date.

On November 5, 1996, Francois was finally arrested and taken into custody. Three days later, the State charged her with the crime of absence from custody under Iowa Code section 719.4(3). Francois moved to dismiss the trial information on the ground that prosecution was barred by the applicable three-year statute of limitations. *See* Iowa Code § 802.3. The State resisted, contending that absence from custody is a continuing offense under Iowa Code section 802.7. The trial court rejected the State's argument and dismissed the trial information. The State appeals.

## II. *Scope of Review.*

We review the trial court's interpretation of statutes for errors of law. *See State v. Hippler,* 545 N.W.2d 568, 570 (Iowa 1996); *State v. Bond,* 493 N.W.2d 826, 828 (Iowa 1992). We are not bound by the trial court's legal determinations. *See Bond,* 493 N.W.2d at 828.

### III. Is the Crime of Absence from Custody a Continuing Offense?

Generally, the State must prosecute an indictable serious misdemeanor within three years after its commission. *See* Iowa Code § 802.3. When, however, "an offense is based on a series of acts committed at different times, the period of limitation ... commence[s] upon the commission of the last of such acts." *Id.* § 802.7. Section 802.7 has the effect of tolling the statute of limitations for continuing offenses until the last act constituting the offense is committed.

Whether the crime of absence from custody is a continuing offense under section 802.7 is a question of first impression in Iowa. We have previously determined that

> a particular offense should not be construed as a continuing one "unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that [the legislature] must assuredly have intended that it be treated as a continuing one."

*State v. Harrison,* 561 N.W.2d 28, 29 (Iowa 1997) (quoting *Toussie v. United States,* 397 U.S. 112, 115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156, 161 (1970)). This test is strictly applied in order to limit the circumstances under which the continuing offense doctrine is utilized. *See id.* The continuing offense doctrine is limited in its application in deference to the rule that "criminal limitations statutes are to be liberally interpreted in favor of repose." *Id.*

With these principles in mind, we now turn to an examination of the language of section 719.4(3) and the nature of the crime defined in that statute. If either the language of the statute or the nature of the crime shows a legislative intent that the crime of absence from custody be considered a continuing offense, then we will so interpret the statute for purposes of the limitations period.

A. *Language of statute.* Section 719.4(3) makes it a crime to be absent from custody:

> A person who has been committed to an institution under the control of the Iowa department of corrections, to a community-based correctional facility, or to a jail or correctional institution, who knowingly and voluntarily *is absent* from a place where the person is required to be, commits a serious misdemeanor.

Iowa Code § 719.4(3) (emphasis added); *see also Webster's Third New International Dictionary* 1197 (unabr. ed.1993) (stating the word "is" is a form of the infinitive "to be"). The state of "being absent" is not limited to a one-time occurrence, but rather indicates an ongoing condition.

We have had the opportunity to interpret a different criminal statute subject to a similar interpretation in *Hippler.* In that case, the court considered whether the crime of theft by one who "[e]xercises control over stolen property" was a continuing offense. *Hippler,* 545 N.W.2d at 571 (quoting Iowa Code § 714.1(4) (1993)). Even though the quoted language could reasonably be interpreted as describing "a continuous, ongoing felonious act," namely, exercising control over stolen property, we concluded the language of the statute did not *compel* a conclusion that this crime should be construed as a continuing one. *Id.* at 571–72. We explained, "Our theft statute does not *expressly state* that the possession or exercising control alternative of the theft statute is a continuing offense." *Id.* at 572 (emphasis added). Likewise, section 719.4(3) does not "expressly state" that absence from custody is a continuing offense.

The State points out, however, that the legislative history of section 719.4(3) shows the legislature's intent to make the offense of absence from custody a continuing one. *See In re Property Seized on Jan. 31, 1983,* 362 N.W.2d 565, 570 (Iowa 1985) (allowing consideration of legislative amendments to guide statutory interpretation). The predecessor statute to section 719.4(3) defined the crime as follows:

> A person who has been committed to an institution under the control of the Iowa department of corrections, or to a jail or correctional institution, who knowingly and voluntarily *leaves* a place where the person is required to be, commits a serious misdemeanor.

Iowa Code § 719.4(3) (1985) (emphasis added). As a comparison of the former and current versions of section 719.4(3) reveals,

the legislature amended the statute in 1986 to substitute the phrase "is absent from" in place of the word "leaves." *See* 1986 Iowa Acts ch. 1238, § 30. The word "leave" is defined as "to go away or depart from." *See Webster's Third New International Dictionary* 1287.

The State contends this amendment changed the crime from a solitary act, leaving, to a continuing offense, the state of being absent. This argument has some facial appeal. But when the 1986 amendment is viewed in the context of the entire legislative history of this statute, it becomes apparent that the amendment does not demonstrate a legislative intent to change the nature of the crime.

When the new criminal code was enacted in 1976, the escape statute was completely rewritten. *See State v. Burtlow,* 299 N.W.2d 665, 668 (Iowa 1980); 1976 Iowa Acts ch. 1245, § 1904 (codified at Iowa Code § 719.4 (1979)). At that time section 719.4(3) applied to a person "who knowingly and voluntarily *absents* himself or herself from any place where the person is required to be...." Iowa Code § 719.4(3) (1979) (emphasis added). This language remained unchanged until the 1985 Code when, for an unexplained reason, section 719.4(3) was changed to read, "who knowingly and voluntarily *leaves* a place where the person is required to be...." Iowa Code § 719.4(3) (1985). The following year the legislature amended the statute to replace the word "leaves" with the phrase "is absent from." *See* 1986 Iowa Acts ch. 1238, § 30. The act in which this amendment was included bore the heading "Code and Reorganization *Corrections.*" *Id.* (emphasis added). The session laws state that the act relates "to Code corrections which

adjust and correct earlier omissions and inaccuracies, remove inconsistencies, and reflect or alter current practices, and providing penalties." *Id.* Although the act did not return section 719.4(3) to its earlier form ("absents"), there is nothing in the act which indicates the amendments embodied in the act were intended to alter current law. Based on this legislative history, we conclude an error was made by the 1985 Code editor and the amendment in 1986 changing the language of the statute was merely intended to correct this error.

We think the language of the statute, even when considered in light of the 1986 amendment, does not "compel[ ] ... a conclusion" that the crime of absence from custody is a continuing offense. *See Harrison,* 561 N.W.2d at 29. That does not end our inquiry, however, because the nature of the offense may support a conclusion that the crime is a continuing one. *See id.* Therefore, we turn to a consideration of that factor.

B. *Nature of the offense.* The crime of absence from custody is found in the statutory provision defining escape and related crimes.[1] *See Burtlow,* 299 N.W.2d at 668–69. Before the enactment of section 719.4 in 1976, the crime of escape was defined generally and was not broken down into separate offenses as it is now. *See id.* A review of our interpretation of this prior general escape statute is instructive on the issue before us. In *State v. Reese,* 272 N.W.2d 863, 866–67 (Iowa 1978), this court adopted a necessity defense to an escape charge. As one of the conditions of this defense, an escapee must " 'immediately report[ ] to the proper authorities when he has attained a position of safety

---

1. The other subparagraphs of section 719.4 provide:

   1. A person convicted of a felony, or charged with or arrested for the commission of a felony, who *intentionally escapes* from a detention facility, community-based correctional facility, or institution to which the person has been committed by reason of the conviction, charge, or arrest, or from the custody of any public officer or employee to whom the person has been entrusted, commits a class "D" felony.
   2. A person convicted of, charged with, or arrested for a misdemeanor, who *intentionally*

   *escapes* from a detention facility, community-based correctional facility, or institution to which the person has been committed by reason of the conviction, charge, or arrest, or from the custody of any public officer or employee to whom the person has been entrusted, commits a serious misdemeanor.

   ...

   4. A person who flees from the state to avoid prosecution for a public offense which is a felony or aggravated misdemeanor commits a class "D" felony.

   (Emphasis added.)

from the immediate threat.'" *Reese*, 272 N.W.2d at 866 (quoting *People v. Lovercamp*, 43 Cal.App.3d 823, 831–32, 118 Cal.Rptr. 110, 115 (1974)). Thus, we implicitly recognized that escapees have a *continuing duty* to turn themselves in after escaping. *See id.* at 870 (McCormick, J., dissenting) (observing that the majority's definition of the necessity defense "makes unauthorized failure to return a crime"). The existence of a continuing duty to return after an unauthorized departure indicates that the offense is continuing as well:

> If the crime of escape occurred only during the course of the escapee's initial departure from custody, and did not continue thereafter, there would be no duty for the escapee to report to the authorities after the duress had terminated.

*Campbell v. Griffin*, 101 Nev. 718, 710 P.2d 70, 72 (1985), *appeal dismissed*, 476 U.S. 1154, 106 S.Ct. 2269, 90 L.Ed.2d 713 (1986). Thus, this court's holding in *Reese* indicates that escape is a continuing offense.

A review of cases in other jurisdictions shows support for this characterization of the escape crime. Escape is considered a continuing offense by those courts—including the United States Supreme Court—that require an escapee to immediately submit to the authorities after an escape before the escapee can rely on a necessity defense to an escape charge. *See United States v. Bailey*, 444 U.S. 394, 413, 100 S.Ct. 624, 636, 62 L.Ed.2d 575, 592 (1980) ("[W]e think it clear beyond peradventure that escape from federal custody ... is a continuing offense and that an escapee can be held liable for failure to return to custody as well as for his initial departure."); *Wells v. State*, 687 P.2d 346, 350 (Alaska Ct.App.1984) (holding that because the necessity defense requires a defendant to turn himself in, escape is a continuing offense); *Harbin v. State*, 581 So.2d 1263, 1266 (Ala.Crim.App.1991) (same); *People v. Miller*, 157 Ill.App.3d 43, 109 Ill.Dec. 146, 509 N.E.2d 807, 808–09 (1987) (same); *State v. Burnett*, 292 Minn. 484, 195 N.W.2d 189, 189 (1972) (per curiam) (same); *State v. Jones*, 556 S.W.2d 736, 738 (Mo.Ct.App.1977) (same); *Campbell*, 710 P.2d at 72–73 (same); *State v. Martinez*, 109 N.M. 34, 781 P.2d 306,

309 (Ct.App.1989) (same); *State v. White*, 21 N.C.App. 173, 203 S.E.2d 644, 646 (1974), *appeal dismissed*, 285 N.C. 595, 205 S.E.2d 726 (1974) (noting that escape is a continuing offense); *State v. Burns*, 151 Vt. 621, 564 A.2d 593, 595–96 (1989) (holding same); *Ray v. State*, 33 Wis.2d 685, 148 N.W.2d 31, 33 (1967) (same); *see also* 30A C.J.S. *Escape* § 3, at 401 (1992 & Supp.1997) ("Escape is a continuing offense such that escapee continues to commit the offense as long as he voluntarily remains at large."). Likewise, escape is not considered a continuing offense in jurisdictions that do not require an escapee to return to custody, but rather use such evidence merely as a discretionary factor in applying the necessity defense. *See People v. Mendoza*, 108 Mich.App. 733, 310 N.W.2d 860, 862–64 (1981) (holding that necessity defense to escape did not require defendant to turn herself in, and that escape is not a continuing offense); *Spakes v. State*, 913 S.W.2d 597, 598 n. * (Tex.Crim.App.1996) (same).

Turning now to the absence-from-custody offense, we find no material distinction between it and the crime of escape for purposes of the continuing offense statute. Indeed, we have treated absence from custody under section 719.4(3) as an "escape" offense for purposes of sentencing. *See Burtlow*, 299 N.W.2d at 668 ("Even though the word 'escape' does not appear in subsection three, the crime is plainly an escape offense within the meaning of [the consecutive sentence statute].").

The Ninth Circuit Court of Appeals found no basis upon which to distinguish escape and failure-to-appear offenses in the context of a continuing-offense analysis:

> [A] defendant who fails to appear for sentencing presents a threat to society analogous to that posed by an escaped prisoner. Both are convicted criminals obligated to serve sentences or facing sentencing. In addition, the failure of a defendant to appear for sentencing poses a threat to the integrity and authority of the court.

*United States v. Gray*, 876 F.2d 1411, 1419 (9th Cir.1989) (holding that "failure to appear is also a continuing offense"), *cert. denied*, 495 U.S. 930, 110 S.Ct. 2168, 109 L.Ed.2d 497 (1990); *see also Woolsey v. State*, 111 Nev. 1440, 906 P.2d 723, 726 (1995) (holding that

failure to appear when released on bond was a continuing offense). This rationale is subject to some doubt in Iowa because this court has stated that persons violating section 719.4(3) do not present a danger of injury to persons or property as do criminals who escape from custody. *See Burtlow,* 299 N.W.2d at 669 (justifying the difference in severity of punishment between section 719.4(1) and section 719.4(3)). In retrospect, our conclusion that convicted criminals who fail to appear are *no* threat to society may be too absolute. It is perhaps more accurate to say that the threat posed by criminals who fail to return after an authorized release is less than that posed by a confined criminal, but is not nonexistent. Additionally, we think all violators of section 719.4 pose a "threat to the integrity and authority of the court" and to the authority of correction officials. These similarities justify treating escape crimes the same for purposes of the continuing offense doctrine.

Francois argues that several critical distinctions exist between subsections (1) and (2) of section 719.4, which address escape, and subsection (3), which defines absence from custody. First, she notes that subsections (1) and (2) apply only to those convicted of a felony or misdemeanor, while subsection (3) applies to any "person who has been committed to an institution." Iowa Code § 719.4. This distinction, Francois asserts, makes it unfair to apply the continuing offense doctrine to the broader class covered by subsection (3). Second, Francois points out that the escape provisions require a mens rea of "intentionally," whereas absence from custody requires only a "knowing and voluntary" act.

We do not find these arguments persuasive. We note, first of all, that the scope of section 719.4(3) encompasses felons and misdemeanants, the same offenders to which subsections (1) and (2) apply. The primary distinction between subsection (3) and subsections (1) and (2) is the degree of liberty enjoyed by the offender prior to commission of the section 719.4 violation. This difference is reflected in the concomitant levels of punishment for escape and absence from custody. *See Burtlow,* 299 N.W.2d at 669. It provides no basis to distinguish one offense as continuing and the other as not continu-

ing. In addition, the modest difference between the mens rea required for these crimes does not demonstrate a legislative intent to treat only escape as a continuing offense. Both are general intent crimes. *See State v. Buchanan,* 549 N.W.2d 291, 293–94 (Iowa 1996) (noting that "knowingly" and "intentionally" do not indicate specific intent).

As a final matter, we address and distinguish our decision in *Hippler* that the crime of theft is not a continuing offense. The escape crimes considered here are different in nature from the theft crime we interpreted in *Hippler* for two reasons. First, there is a continued danger to society when a person, whom the court has determined should be in custody, remains at large. Moreover, when such a person continues to elude arrest, the threat to the authority of the courts and the correctional system continues. A similar danger or threat is not inherent in a thief's continued possession of stolen property. Second, as we recognized in *Reese,* an escapee, and likewise a person absent from custody, has a continuing duty to return to custody. There is no analogous duty imposed upon a thief to return stolen property. Therefore, we think there are fundamental differences in the nature of the offenses of absence from custody and theft which justify our different characterization of these crimes for statute of limitations purposes.

### IV. *Summary and Disposition.*

■ The nature of the offense of absence from custody demonstrates the legislature's intent to make this crime a continuing offense. Because absence from custody under section 719.4(3) is a continuing offense for purposes of the statute of limitations, the limitations period did not begin to run in this case until November 5, 1996. The trial information filed three days later was, therefore, timely. Consequently, the trial court erred in granting Francois' motion to dismiss. We reverse and remand the case for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**