**IN THE COURT OF APPEALS OF IOWA**

No. 15-1515
Filed July 27, 2016

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**EDDIE TIPTON,**
    Defendant-Appellant.
_____

    Appeal from the Iowa District Court for Polk County, Jeffrey D. Farrell, Judge.

    Eddie Tipton appeals his convictions for two lottery related charges. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

    Dean A. Stowers of Stowers & Sarcone, P.L.C., West Des Moines, for appellant.

    Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

    Heard by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**VAITHESWARAN, Judge.**

On December 23, 2010, a Hot Lotto ticket was purchased at a convenience store in Des Moines. This winning ticket, worth sixteen and one-half million dollars, was drawn on December 29, 2010. The purchaser had one year from the draw date to redeem the ticket.

Several people attempted to redeem the ticket, including a Canadian resident, Phillip Johnston. The Iowa Lottery Division rejected Johnston's claim because, although he correctly identified the serial number on the ticket, he did not resemble the purchaser, whose image was captured on a surveillance video. Attorney Crawford Shaw, trustee of a trust that listed Johnston as an officer, also attempted to redeem the ticket. Shaw withdrew his claim in lieu of disclosing the identity of the purchaser.

Almost four years after the purchase, the State released the surveillance video to the public in an attempt to identify the purchaser. An out-of-state Multistate Lottery Association employee identified Eddie Tipton. Tipton was an Iowa employee of the Multistate Lottery Association, which administered the Hot Lotto game with the Iowa Lottery Division. Although employees were disallowed from purchasing tickets, the Iowa legislature did not criminalize this activity.

The legislature did criminalize other activities associated with ticket purchases. *See* Iowa Code § 99G.36 (2015). Based on this statute, the State charged Tipton with two felonies: (1) passing or attempting to redeem a lottery ticket with the specific intent to defraud and (2) tampering with lottery equipment with the intent to influence winnings. *See id.* § 99G.36(1), (2). The State filed

the trial information on January 15, 2015. Tipton moved to dismiss the charges as time-barred by the applicable three-year statute of limitations. The district court denied the motion following a hearing. During trial, Tipton raised the issue again and the court reaffirmed its prior rulings. After trial, a jury found Tipton guilty of both crimes.

On appeal, Tipton contends (I) the district court should have granted his motion to dismiss the charges on the ground they were time barred, (II) the jury's findings of guilt were not supported by sufficient evidence, and (III) the district court abused its discretion in making certain evidentiary rulings and erred in instructing the jury.

## I.      Statute of Limitations

"A statute of limitations is designed to prevent fraudulent and stale actions from arising after a great lapse of time while still preserving the right to pursue a claim for a reasonable period of time." *State v. Walden*, 870 N.W.2d 842, 845 (Iowa 2015). The pertinent statute of limitations in this case required the trial information to "be found within three years." Iowa Code § 802.3.

Tipton contends "the State failed to establish that the offenses were committed within the limitations period." The State counters by invoking the "continuing offense" doctrine or, alternatively, the statutory fraud extension. Our review of the court's rulings is for errors of law. *See Walden*, 870 N.W.2d at 844. Our record for review is limited to "the indictment or information and the minutes of evidence." Iowa R. Crim. P. 2.11(6)(a); *cf. Clark v. Miller*, 503 N.W.2d 422, 424 (Iowa 1993) (stating the record is limited to the allegations contained in the

pleadings). Although Tipton reasserted the grounds for the motion during trial, neither his motion nor the court's ruling relied on the evidence adduced at trial. We accept those facts as true for purposes of resolving the statute of limitations question. *See State v. Majeres*, No. 01-1805, 2002 WL 31031048, at *2 (Iowa Ct. App. Sept. 11, 2002) (addressing assertion that trial information did not set forth an offense). *Cf. State v. Kraklio*, No. 03-0813, 2005 WL 156803, at *6 n.1 (Iowa Ct. App. Jan. 26, 2005) (noting the statute of limitations defense was "based upon and depend[ed] upon the record made on limited remand, rather than being based upon the trial information and minutes of evidence").

### A. Continuing Offense

The continuing offense doctrine is triggered "[w]hen an offense is based on a series of acts committed at different times." Iowa Code § 802.7. Under these circumstances, "the period of limitation . . . commence[s] upon the commission of the last of such acts." *Id.*

"[A] particular offense should not be construed as a continuing one 'unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one.'" *State v. Harrison*, 561 N.W.2d 28, 29 (Iowa 1997) (citation omitted). "This test is strictly applied in order to limit the circumstances under which the continuing offense doctrine is utilized." *State v. Francois*, 577 N.W.2d 417, 418 (Iowa 1998).

### 1. *Passing or Attempting to Redeem*

In pertinent part, section 99G.36(1) criminalizes passing or attempting to redeem a lottery ticket. Nothing in the language of the statute compels a conclusion that these offenses should be deemed continuing. The crimes envision discrete acts—passing a lottery ticket and attempting to redeem a lottery ticket. *Cf. id.* ("The state of 'being absent' is not limited to a one-time occurrence, but rather indicates an ongoing condition.").

The State focuses on the nature of the crimes. In its view, several acts of passing or attempting to redeem the winning lottery ticket occurred after the December 23, 2010 purchase and "continued until at least January 17, 2012"; therefore, the trial information was timely filed on January 15, 2015. The State's argument may have held sway under a theory that Tipton aided and abetted the commission of the crimes. But the State withdrew its aiding and abetting theory during trial, which meant it had to prove that Tipton alone committed the crimes.

To establish Tipton's commission of these offenses, the State hangs it hat on the surveillance video and the subsequent identification of him as the purchaser of the winning lottery ticket. As noted, the purchase itself was not a crime. Certainly, the inference could be drawn that the ticket was passed to someone, because at least two people attempted to redeem it. But the minutes do not disclose when, if at all, Tipton acted after the ticket was purchased.

We agree with Tipton that the very latest he could have acted was December 29, 2011—the last date to redeem the ticket. As he explained in his motion to dismiss, "[t]he ticket was given to the Iowa Lottery [Division] by attorney

Crawford Shaw on December 29, 2011"; therefore, "there could have been no attempt to . . . pass the ticket attributable to [him] after December 29 because the Iowa Lottery [Division] had the ticket in their custody and control." After that date, no person, including Tipton, could have successfully passed or attempted to redeem the ticket. Accordingly, the offenses of passing or attempting to redeem a lottery ticket had to be committed on or before December 29, 2011.

We recognize events continued to unfold after December 29, 2011. But, as Tipton asserted in his motion to dismiss, "there appears to be no probable cause basis in the minutes [of evidence] to assert [he] was controlling or directing [Shaw's] actions in any way." The minutes describe the meeting as follows:

> On January 17, 2012, Crawford Shaw traveled to Iowa and met with officials from the Iowa Lottery to provide documentation that might help reach an agreement for the release of the winnings. He stated that he was unable to identify the attorney for whom he was working, nor the owner of the lottery ticket, citing attorney client privilege. He stated he was contacted by an attorney he knew well, and that attorney's client won the lottery but wished to remain anonymous. He also claimed to not know who the owner of the ticket is. He stated that the attorney told him that the ticket was delivered to him by the purchaser of the ticket. The purchaser told the attorney that they needed to figure out how to make the presentation of the ticket without revealing his (the purchaser's) identity or the attorney's. Shaw believed that the purchaser didn't want the lawyer to be identified because he worried that then the purchaser could be identified. On January 26, Shaw withdrew the claim of ownership to the lottery ticket.

The State did not express or even intimate any involvement by Tipton in this meeting.

Even if Tipton had been mentioned, the fact remains that the fraud had to be committed on or before the final date of redemption—December 29, 2011.

The trial information was filed on January 15, 2015—more than three years from the date of offense. The trial information was untimely with respect to the passing or attempting to redeem count.

*2.    Tampering*

Section 99G.36(2) criminalizes influencing or attempting to influence the winning of a prize by tampering with lottery equipment. Neither the explicit language of this statute nor the nature of the crime compels a conclusion that the crime was continuing in nature. While Tipton could have had a longstanding intent to influence the prize, tampering with lottery equipment was a discrete act, defined for the jury as the "unauthorized alterations or changes interfering with the proper functioning of the computer." The minutes stated this act occurred on November 20, 2010. The trial information was filed well over three years after that date.

Notwithstanding the assertion of this specific date, the State insists the tampering was committed "within the three-year limitations period because [Tipton] attempted to influence the winning of a prize claimed on January 17, 2012." The prize was claimed on December 29, 2011. While negotiations about the claim continued after that date, Tipton could not have acted with the intent to influence the prize following the final day for claiming the winnings, which was December 29, 2011. *See State v. Hippler*, 545 N.W.2d 568 (Iowa 1996) (concluding theft by exercising control over stolen property is not a continuing offense). The trial information charging Tipton with tampering was filed more

than three years after that date.[1]  It was untimely.  We turn to the statutory extension of time for fraud.

### B.    Fraud Extension

Under the fraud extension, "prosecution may . . . be commenced" after expiration of the three-year limitations period and "within one year after discovery of the offense by an aggrieved party" "for any offense a material element of which is . . . fraud."  Iowa Code § 802.5.  "'[D]iscovery' . . . occurs when the authorities know or should know in the exercise of reasonable diligence that there is probable cause to believe a criminal fraud has been committed."  *State v. Wilson*, 573 N.W.2d 248, 254 (Iowa 1998) (noting the rule "include[s] a probable cause element and a due or reasonable diligence requirement").

### 1.    Passing or Attempting to Redeem

As discussed, the three-year limitations period began to run on December 29, 2011, and expired on December 29, 2014.  The question here is whether the passing or attempting to redeem offense was discovered later, allowing the State to invoke the one-year extension.

The State argues the offenses were "discovered" in October 2014 when the out-of-state Multistate Lottery Association employee identified Tipton as the purchaser of the winning ticket.  According to the minutes, the State was indeed unaware of the purchaser's identity until October 2014.  However, the State suspected fraud long before then.

---

[1] The State alleged Tipton tampered with the lottery equipment on November 20, 2010. Arguably, this date was the date of the offense.  However, for statute of limitations purposes, we give the State the benefit of the doubt and use the very last date on which Tipton could have influenced the winnings, even if the tampering occurred earlier.

In November 2011, Canadian resident Phillip Johnston came forward to redeem the ticket. He provided the fifteen-digit serial number on the winning ticket and said he had purchased the ticket. After comparing statements he made against facts known from the video, the Iowa Lottery Division declined to pay him the winnings. According to the minutes of evidence, Johnston "admitted . . . he was not . . . the owner of the ticket" and said "he was representing an anonymous party." This episode afforded the State probable cause to believe a crime was committed.

The episode was amplified by what happened next. On December 29, 2011, a local law firm presented the Iowa Lottery Division with the winning ticket on behalf of Crawford Shaw, trustee of a trust with which Johnston was associated. The Lottery Division refused to pay the winning proceeds because of security concerns. If the State was not on notice of fraud in November 2011, this incident should have placed the State on notice in "the exercise of reasonable diligence that there [was] probable cause to believe a criminal fraud ha[d] been committed." *Id.*

In sum, the offense of passing or attempting to redeem the lottery ticket was discovered as early as November 2011, and no later than December 29, 2011. The one-year fraud extension does not aid the State because the date of the commission of the offense and the discovery of the offense were one and the same. The statute of limitations expired before the trial information was filed and the count charging passing or attempting to redeem the lottery ticket should have been dismissed as time-barred. We partially reverse the ruling denying Tipton's

motion to dismiss and remand for entry of an order dismissing the passing or attempting to redeem count of the trial information.

*2.    Tampering*

As a preliminary matter, Tipton argues the tampering offense was not an offense involving "fraud."[2]  The jury instructions belie this assertion.  The jury was instructed the offense of tampering required proof of "all of the following elements of *fraud*":

> 1. On November 20, 2010, defendant intentionally tampered with a computer that housed the random number generator program for the Hot Lotto game;
> 2. That computer was lottery equipment;
> 3. The defendant intended to influence the winning of the Hot Lotto prize.

(Emphasis added.)  The jury was further instructed "'fraud' or to 'defraud' means a false representation of a material fact made with the knowledge it is false, or concealment of a material fact made with the knowledge it is false, and made with the intent to deceive in order to gain something of value."  We conclude the intentional tampering with a computer having the intention to influence the winning of the prize amounted to the concealment of a material fact with the intent to deceive to gain something of value.  We further conclude the "fraud" component of the fraud extension to the statute of limitations was satisfied with respect to the tampering count.

We turn to when the tampering was discovered for purposes of the fraud extension.  Again, the State argues the tampering offense could not have been

---

[2] Tipton does not make the same argument with respect to the crime of passing or attempting to redeem the ticket and would be hard pressed to do so because the crime requires proof of a specific intent to defraud.

discovered until October 2014, when Tipton was identified as the purchaser. With respect to this count, we agree with the State.

Although the State had reason to know criminal fraud was committed as of December 29, 2011, the State could not have known the fraud included tampering with lottery equipment until Tipton was identified as the purchaser. It is undisputed this identification was made in October 2014. Only then did the State have reason to believe that a lottery employee may have manipulated the winning numbers on State computers. Therefore, the one-year extension began to run in October 2014. The trial information charging Tipton with tampering was filed within this extension period. Accordingly, we conclude the district court did not err in denying Tipton's motion to dismiss the tampering charge on statute of limitations grounds. We further find no error in the district court's refusal to submit the statute of limitations question to the jury. As noted, the month and year in which the State was on notice of possible tampering was undisputed. Accordingly, the statute of limitations question was one of law for the court. *See Gabelmann v. NFO, Inc.*, 571 N.W.2d 476, 481-82 (Iowa 1997).

In summary, we affirm the district court's denial of Tipton's motion to dismiss as to the tampering charge and reverse the district court's denial of the motion as to the passing or attempting to redeem charge. The passing or attempting to redeem charge should have been dismissed as time-barred, leaving only the tampering charge for trial. This leads us to Tipton's sufficiency-of-the-evidence challenge to the tampering charge.

## II.     *Sufficiency of the Evidence—Tampering*

The jury was instructed the State would have to prove the following elements of tampering:

> 1. On November 20, 2010, defendant intentionally tampered with a computer that housed the random number generator program for the Hot Lotto game;
> 2. That computer was lottery equipment;
> 3. The defendant intended to influence the winning of the Hot Lotto prize.

A reasonable juror could have found the following facts. Tipton was employed by the Multistate Lottery Association from 2003 to January 2015. He was in charge of information technology and participated in the drafting and editing of security policies associated with lottery ticket claims. He had "access to confidential information that could affect the integrity of the lottery games at [the Multistate Lottery Association]." Indeed, he "developed software that [the Multistate Lottery Association] used," including "the program that actually picked the numbers for the Hot Lotto game." Tipton had extensive knowledge of rootkits, "malicious software intended to run without being noticed that provides some intended consequence for the creator or distributor of the rootkit, but an unintended consequence . . . for the machine's primary user."

The Hot Lotto numbers were picked by two random number generator computers located in the draw room. Each computer was encased in a clear enclosure that had two locks and two keys. "One key was managed by the draw manager, and the other key was managed by [an] outsourced third-party auditing firm." "[E]very time the[] cases were open, there was an outside auditor and a

[Multistate Lottery Association] staff person involved in breaking the seal or opening the locks." The draw room was under video surveillance.

On November 20, 2010, Tipton entered the room housing the lottery computers "[t]o change the time on the random number generators." Also present in the room were two other individuals. Their attention was not focused on Tipton. According to one witness, it would have been "physically possible to insert a thumb drive into an RNG while [it was] in its enclosure" if the "enclosure [wa]s unlocked." The thumb drive would "be a means by which one could install [malicious] software on an RNG."

At the end of December 2010, the two RNG computers "were completely wiped" and "removed from service." This act prevented the discovery of any malware on the computers. The jury reasonably could have inferred from Tipton's position in the organization and his knowledge of security protocols that he was aware of this upcoming event when he entered the draw room in November 2010.

The purchaser of the December 23, 2010 winning lottery ticket elected to manually pick the numbers rather than have the computer pick the numbers. The purchaser also played two sets of numbers. Two sets of numbers were required to guarantee a winning ticket because either one of the random number generators could dispense the winning numbers. Multistate Lottery Division "draw managers" "flipped a coin" to determine "which one of . . . the machines they would use." A jury reasonably could have inferred that Tipton was aware of this procedure for selecting the winning numbers.

Based on this circumstantial evidence, the jury reasonably could have found that Tipton tampered with the random number generator computers with the intent to influence the lottery winnings. *See State v. Vaughan*, 859 N.W.2d 492, 497 (Iowa 2015) ("In assessing the sufficiency of the evidence, we find circumstantial evidence equally as probative as direct."). Substantial evidence supported the jury's finding of guilt on the tampering charge. *See State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012) ("We will uphold a verdict if substantial record evidence supports it.").

### III. *Evidentiary Issues and Challenges to Jury Instructions*

Tipton raises a number of evidentiary issues. First, he contends the "trial court erred in allowing incriminating assumptions from facts not in evidence, namely, the unavailability and inadmissible statements of" potential coconspirators or aiders and abettors. All of this evidence bore on the sufficiency of the evidence supporting the passing or attempting to redeem charge. Having concluded the charge must be dismissed on statute-of-limitations grounds, we find it unnecessary to address this issue.

Next, Tipton asserts the "trial court erred in prohibiting evidence that there were no instances of unauthorized or unaccounted for insertions of external drives or devices on the RNG computers after December 2010." Because the State charged Tipton with tampering on a specific date—November 20, 2010, post-2010 evidence of no tampering would have been irrelevant. While we were willing to find Tipton's efforts to "influence the winning" might have allowed the statute of limitations to begin running on December 29, 2011, there was no

evidence the act of tampering occurred after November 20, 2010. Accordingly, the district court did not err in declining to permit the introduction of post-2010 non-tampering evidence.

Finally, Tipton raises several challenges to the jury instructions: (1) the failure to "instruct the jury that facts are not proven by evidence requiring speculation or conjecture, or merely raising a suspicion," (2) instructing the jury "that the offense was a continuing offense occurring 'on or about December 23, 2010 to January 17, 2012,'" and (3) the court's instruction on the definition of "attempt" to redeem.

The district court rejected the first challenge on the ground that several model jury instructions essentially included "the same information." We discern no error in this ruling. The second and third challenges go to the passing or attempting to redeem count, which we have concluded must be dismissed on statute of limitations grounds. Accordingly, we need not address them.

## IV.    *Disposition*

The district court's ruling on Tipton's motion to dismiss the trial information on statute of limitations grounds is affirmed in part and reversed in part. The denial of the motion with respect to the tampering charge is affirmed. The denial of the motion with respect to the passing or attempting to redeem charge is reversed and remanded for dismissal of that charge.

We affirm the jury's finding of guilt on the tampering charge.  We reject or find it unnecessary to decide the evidentiary and jury instruction issues raised by Tipton.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**